IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TOSHIBA CORPORATION,               )
                                   )
            Plaintiff,             )
                                   )
    v.                             )        Civil Action No. 05-757 (KAJ)
                                   )
CYBERHOME ENTERTAINMENT, INC.      )
                                   )
            Defendant.             )

**CYBERHOME ENTERTAINMENT, INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER
VENUE OR, ALTERNATIVELY, TO STAY THE CASE**

John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Defendant
CyberHome Entertainment, Inc.*

OF COUNSEL:

Joel N. Bock
SONNENSCHEIN NATH & ROSENTHAL LLP
101 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078
jbock@sonnenschein.com

Laura A. Wytsma
SONNENSCHEIN NATH & ROSENTHAL LLP
601 S. Figueroa Street, Suite 1500
Los Angeles, California  90017
lwytsma@sonnenschein.com

Dated:  December 21, 2005

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ............................................................................ iii

NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................. 2

    The Relevant Parties ............................................................................ 2

    The Patents-in-Suit............................................................................... 3

    The DVD License ................................................................................ 3

    Toshiba's Improper Attempt to Terminate the DVD License ......................... 5

ARGUMENT .......................................................................................... 8

I.      TOSHIBA'S AGREEMENT TO LITIGATE ALL DVD
        LICENSE DISPUTES IN NEW YORK REQUIRES
        DISMISSAL OF THIS CASE ............................................................. 8

II.     TOSHIBA'S AGREEMENT TO LITIGATE AGAINST
        CITRON IN NEW YORK, AS WELL AS THE PARTIES'
        CONVENIENCE AND THE INTERESTS OF JUSTICE,
        SUPPORT A TRANSFER OF THIS CASE ..................................... 11

        A.    The Private Interests Here Support a Transfer...................... 12

              1.    Toshiba Is Bound By Its Forum Selection Clause..... 12

              2.    Toshiba's Forum Preference Lacks a Rational or
                    Logical Basis, Particularly Given Its Prior
                    Agreement to Litigate Licensing Disputes with
                    Citron in New York ..................................................... 13

              3.    CyberHome Prefers To Litigate in New York,
                    Where Citron and Toshiba Must Litigate a
                    Related Contract Dispute ........................................... 14

              4.    The Convenience of the Parties and the Location
                    of Books and Records ................................................. 15

              5.    Convenience of the Witnesses ................................... 16

                                                    064833.1001

B.     Public Interests Weigh In Favor of Transferring this Case.... 17

       1.     Practical Considerations Facilitating Trial Favor Transfer............................................................ 17

       2.     Relative Administrative Burden Favors a Transfer ... 17

       3.     Local Interest in this Controversy Favors Transfer ... 20

       4.     Expertise of Local Judges .......................................... 20

III.     THIS CASE SHOULD BE STAYED PENDING A RESOLUTION OF TOSHIBA'S CONTRACTUAL DISPUTE WITH CITRON................................................................. 21

     A.     Patent Infringement Actions Should be Filed Against the "True" Defendants -- Manufacturers Controlling Product Design...................................................................... 21

     B.     Staying This Action Will Serve The Interests Of Judicial Economy................................................................ 23

CONCLUSION......................................................................................................... 25

DB02:5131987.1                                          064833.1001

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Accord Tsoukanelis v. Country Pure Foods, Inc.*,
  337 F. Supp. 2d 600 (D. Del. 2004).................................................................. 12

*Ambrose v. Steelcase, Inc.*,
  No. 02 C 2753, 2002 WL 1447871 (N.D. Ill. Jul. 3, 2002 .......................... 21

*Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.*,
  No. Civ. 05-375, 2005 WL 2786691 (D. Del. Oct. 26, 2005) ................................ 16, 19

*ATSPI, Inc. v. Sharper Image, Inc.*,
  677 F. Supp. 842 (W.D. Pa. 1988)............................................................... 23

*Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981) ............................................. 21

*Burstein v. Applied Extrusion Technologies*,
  829 F. Supp. 106 (D. Del. 1992)............................................................ 13, 14

*C.R. Bard Inc. v. Guidant Corporation*,
  997 F. Supp. 556 (D. Del. 1998) ................................................................. 19

*Ciena Corp. v. Nortel Networks Inc.*,
  2005 WL 1189881 (E.D. Tex., May 19, 2005)............................................... 23

*Clopay Corp. v. Newell Cos., Inc.*,
  527 F. Supp. 733 (D. Del. 1981)................................................................ 13

*Coastal Steel Corp. v. Tilghman Wheelabrator, LTD.*,
  709 F.2d 190 (3d Cir. 1983) ...................................................................... 9

*Codex Corp. v. Milgo Elec. Corp.*,
  553 F.2d 735 (1st Cir. 1977)...................................................................... 23

*Commissariat a L'Energie Atomique v. Dell Computer Corp.*,
  C.A. No. 03-484-RAS, 2004 WL 1554382 (D. Del. May 13, 2004)................ 22, 23, 24

*Coulter Electronics, Inc. v. SmithKline Corp.*,
  219 U.S.P.Q. 135 (N.D. Ill. 1982) ............................................................. 22

*Crescent Int'l Inc. v. Avatar Communities, Inc.*,
  857 F.2d 943 (3d Cir. 1988) ...................................................................... 8

*Davlyn Manufacturing Co. v. H & M Auto Parts, Inc.*,
  No. Civ. A. 04-5516, 2005 WL 2012071 (E.D. Pa. Aug. 18, 2005) ...................... 1, 19

064833.1001

*Emhart Indus. v. Universal Instrument Corp.*,
  No. 88 C 4960, 1988 WL 121538 (N.D. Ill., Nov. 4, 1988)..........................................22

*Gold v. Burton Corp.*,
  949 F. Supp. 208 (S.D.N.Y. 1996) ................................................................................21

*Hadley v. Shaffer*,
  No. Civ. A. 99-144, 2003 WL 21960406 (D. Del. Aug. 12, 2003) ..............................10

*Haworth, Inc. v. Herman Miller, Inc.*,
  821 F. Supp. 1476 (N.D. Ga. 1992)..............................................................................21

*Hay Acquisition Company I, Inc. v. Schneider*,
  No. Civ. A. 2:04-CV-1236, 2005 WL 1017804 (E.D.Pa. April 27, 2005)...................10

*Hugel v. Corp. of Lloyd's*,
  999 F.2d 206 (7th Cir. 1993) ........................................................................................10

*Johnson & Johnson v. Coopervision, Inc.*,
  720 F. Supp. 1116 (D. Del. 1989)...................................................................................1

*Jordan v. SEI Corporation*,
  No. Civ. A. 96-1616, 1996 WL 296540 (E.D.Pa. June 4, 1996) ..................................10

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ...................................................................................*passim*

*Kahn v. General Motors, Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) ..............................................................................18, 23

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed.Cir. 1990) ...............................................................................18, 22

*Landis v. North American Co.*,
  299 U.S. 248 (1936).......................................................................................................23

*Lauro Lines v. Chasser*,
  490 U.S. 495 (1989).........................................................................................................9

*LG Electronics Inc. v. First Int'l Computer, Inc.*,
  138 F. Supp. 2d 574 (D.N.J. 2001)...............................................................................21

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)..........................................................................................................8, 9

*Mentor Graphics Corp. v. Quickturn Design Systems*,
  77 F. Supp. 2d 505 (D. Del. 1999).......................................................................*passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................................... 8

*Mobil Oil Corp. v. W.R. Grace & Co.*,
    334 F. Supp. 117 (S.D. Tex. 1971) ............................................................................ 23

*Novartis Corp. v. Dr. Reddy's Labs., Ltd.*,
    No. 04 Civ. 0757 (SAS), 2004 WL 2368007 (S.D.N.Y., Oct. 21, 2004) .................... 24

*Omron Healthcare, Inc. v. Maclaren Exps., Ltd.*,
    28 F.3d 600 (7th Cir. 1994) .......................................................................................... 9

*Process and Storage Vessels v. Tank*,
    541 F. Supp. 725 (D. Del. 1982),
    *aff'd,* 760 F.2d 260 (3d Cir. 1985) .............................................................................. 9

*Ricoh Co. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003).....................................................................*passim*

*Salovaara v. Jackson National Life Ins. Co.*,
    246 F.3d 289 (3d Cir. 2001). ........................................................................... 8, 10, 12

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005).......................................................................... 24

*TCW/Camil Holding LLC v. Fox Haron & Camerini LLP*,
    2004 WL 1043193 (D. Del. Apr. 30, 2004)................................................................. 14

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)..................................................................................................... 11

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*,
    775 F. Supp. 759 (D. Del. 1991)............................................................................ 11, 13

*Whelen Tech., Inc. v. Mill Specialties, Inc.*,
    741 F. Supp. 715 (N.D. Ill. 1990) ................................................................... 18, 22, 23

## Statutes

28 U.S.C. § 1404...............................................................................................*passim*

## Rules

Fed. R. Civ. P. 12(b)(6).................................................................................. 1, 8, 12, 25

Fed. R. Civ. P. 42(a) ........................................................................................................ 23

**Other Authorities**

David F. Herr, *Annotated Manual for Complex Litigation,* § 33.63 (3d ed. 2003). ........ 22

064833.1001

## NATURE AND STAGE OF PROCEEDINGS

Defendant CyberHome Entertainment, Inc. ("CyberHome") moves this Court to enforce a forum selection provision requiring this action to be litigated in New York by dismissing the above-captioned action under Rule 12(b)(6), Fed. R. Civ. P., or, alternatively, transferring the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404. If this case is not dismissed or transferred, CyberHome moves the Court to stay this action under the well-recognized "customer suit" doctrine.

## SUMMARY OF ARGUMENT

Simply put, this case should not have been filed – either in Delaware or against CyberHome. For the following equally compelling reasons, the case should be dismissed, transferred or stayed.

*First*, CyberHome's accused DVD players are manufactured by Citron Electronics Company, Ltd. ("Citron"), a company licensed by Toshiba Corporation to make, use, sell and import DVD products pursuant to a DVD license agreement including the six patents-in-suit. Although Toshiba purported to terminate its license agreement with Citron, the parties' license dispute and the scope of the licensed patents must be litigated in New York pursuant to the license agreement's mandatory venue provision.[1] For this reason alone, the Court should dismiss the case.

---

[1] Even if Toshiba had sued Citron, the real party-in-interest here, as a Hong Kong manufacturer Citron is not subject to personal jurisdiction in Delaware and cannot be joined as a defendant in this suit. *See, e.g., Davlyn Manufacturing Co. v. H & M Auto Parts, Inc.,* No. Civ. A. 04-5516, 2005 WL 2012071 (E.D. Pa. Aug. 18, 2005). Thus, Toshiba's infringement claims – which arise out of the alleged termination of its license with Citron – cannot be maintained in Delaware and should be dismissed. *See Johnson & Johnson v. Coopervision, Inc.,* 720 F. Supp. 1116 (D. Del. 1989). However, because Citron has contractually consented to

*Second*, because Toshiba contractually agreed to litigate all disputes relating to its Citron license in New York and because the convenience of the parties and the interests of justice will be served by a transfer to New York, the Court should transfer this case to the District Court for the Southern District of New York under 28 U.S.C. § 1404.

*Third*, even if this case is not dismissed or transferred, there is no reason for the Court to undertake *Markman* claim construction of countless claim terms, in up to 59 patent claims, in six separate patents when Toshiba's real dispute is with Citron. If Citron prevails in its properly filed action in New York, Toshiba's infringement claims against CyberHome here will be obviated. Thus, consistent with the established "customer suit" doctrine, this suit – if not dismissed outright – should be stayed until the license dispute between Toshiba and Citron is resolved.

## STATEMENT OF FACTS

### The Relevant Parties

Toshiba is a Japanese corporation headquartered in Tokyo. Its U.S. headquarters are located at 1251 Avenue of the Americas, in New York, New York. Declaration of Laura Wytsma ("Wytsma Decl."), ¶ 3, Ex. B. Toshiba's operating company with responsibility for DVD Players (Toshiba America Consumer Products, LLC) is located in Wayne, New Jersey. *Id.*, ¶¶ 5, 6. Its other operating companies are located in Southern California and Houston, Texas. *Id.*, ¶ 7. Toshiba is represented in this suit by Foley & Lardner LLP, which has New York offices. *Id.*, ¶ 4.

CyberHome is a California corporation headquartered in Fremont, California, with no facilities, employees or other corporate presence in Delaware. CyberHome does

---

jurisdiction in New York, Toshiba can join Citron as a defendant to any infringement suit against CyberHome in the District Courts of New York.

- 2 -

not itself manufacture DVD players; Citron -- the real party in interest here -- is its

manufacturer. CyberHome's counsel in this litigation have offices located in New York.

Declaration of James J. Carroll ("Carroll Decl."), ¶ 3. Citron is a corporation organized

under the laws of the British Islands with its principal place of business in Sheung Shui,

Hong Kong.

### The Patents-in-Suit

The patents-in-suit have no connection to this judicial district. All six patents

name inventors located in Japan; all six are assigned to Kabushiki Kaisha Toshiba,

located in Japan. Wytsma Decl., ¶¶ 8, 9, Ex. E. Not one patent was prosecuted by patent

lawyers residing in Delaware; Washington DC firms prosecuted all six. *Id.*, ¶ 10. The

six patents-in-suit are part of a DVD patent pool managed by Toshiba. Specifically,

Toshiba is the authorized agent for the DVD 6C Licensing Group ("DVD 6C"), whose

members have pooled their purportedly essential patents for DVD technology and

formats.[2] Toshiba and its attorneys manage the DVD 6C patent pool in Tokyo, Japan.

### The DVD License

Effective July 22, 2004, Toshiba, on behalf of DVD 6C, licensed the 6C patent

pool to Citron pursuant to a DVD Patent License Agreement ("DVD License"). Carroll

Declaration, Ex. A. Among other provisions, the DVD License granted Citron "and its

Affiliates a non-exclusive, non-transferable license to make, have made, use, import,

offer for sale, sell, and otherwise dispose of DVD Products under the DVD Patents" in,

and pursuant to the conditions of, the DVD License. *Id.*, ¶ 2.1 (emphasis added). The six

---

[2]    In addition to Toshiba, the DVD 6C members include Hitachi, Ltd., Matsushita
       Electric Industrial Co., Ltd., Mitsubishi Electric Corporation, Sanyo Electric Co.,
       Ltd., Sharp Corporation, Victor Company of Japan, Ltd. and Warner Home
       Video Inc.

patents at issue here are DVD Patents Toshiba licensed to Citron "and its Affiliates" in the DVD License.[3]

Section 2.3 of the DVD License states that Toshiba releases Citron, its affiliates and their respective customers from any and all claims of infringement of the DVD Patents arising from Citron's and/or its affiliates' making, using, importation, offering for sale, sale or disposal by other means of the DVD Products for the period prior to the Effective Date of the DVD License pursuant to certain conditions incorporated into the DVD License through Exhibit 3 to the DVD License entitled "DVD Patent License Conditions." Carroll Decl., Ex. A. After the Effective Date, the DVD players Citron sold to CyberHome were licensed under the DVD License, which includes the six patents-in-suit. *Id.*

Pursuant to the release, Citron and its affiliates owed no royalties or other payments to Toshiba with respect to any and all sales of DVD Products prior to the Effective Date of the DVD License. *Id.*, Ex. A, at Ex. 3, ¶ 2.1. An "affiliate" is defined in the DVD License as "any corporation, firm, partnership, proprietorship, or other form of business entity, in whatever country organized or resident, directly or indirectly controlled by such party." *Id.*, Ex. A, at Ex. 3, ¶ 1.13. Under this definition, for purposes of this Motion, CyberHome is an "affiliate" of Citron. Carroll Decl., at ¶ 6. Of great import here, the DVD License explicitly "inure[s] to the benefit" of the parties "and each of their respective Affiliates" (including CyberHome) and assigns. *Id.*, Ex. A, at ¶ 6.5.

---

[3]     US Patent Nos. 5,587,991, 5,732,185, 6,009,433 and 6,128,434 are explicitly mentioned in the list of patents included with the DVD License. Although not specifically identified in that list, Citron believes that the other two patents-in-suit (i.e. 6,226,727 and 6,374,040) also are included under the terms of the DVD License.

- 4 -

Significantly, the DVD License contains a broadly-worded venue provision:

> All disputes between the parties hereto arising out of or in connection with the interpretation or execution of this Agreement shall be finally settled by the competent courts of federal or state courts located in the county of New York in the state of New York, and each of the parties to this Agreement hereby submits to the jurisdiction of such courts for the resolution of such disputes and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in such courts or to the convenience or inconvenience of conducting or pursuing any action or proceeding in any such court.

Carroll Decl., Ex. A, ¶ 6.4.

Moreover, the DVD License is governed and construed according to the laws of New York, as if the DVD License was performed within New York, and without references to the conflicts of laws principles thereof. Carroll Decl., Ex. A, ¶ 6.3.

The DVD License is effective until December 31, 2007 and includes automatic five year renewal terms unless Citron notifies Toshiba that it intends to terminate the DVD License. *Id.*, ¶ 5.1. The DVD License further provides for termination upon thirty days written notice specifying the nature of a material breach or failure to perform a material obligation not timely remedied after notice. *Id.*, ¶ 5.3. This suit now follows Toshiba's improper attempt to terminate the DVD License with Citron.

### Toshiba's Improper Attempt to Terminate the DVD License [4]

After Toshiba claimed – and Citron disputed – a material breach of the DVD License, Toshiba notified Citron on July 20, 2005, that it would terminate the DVD License effective August 19, 2005 unless Citron cured the alleged breach. Carroll Decl.,

---

[4] While the facts relating to Toshiba's improper attempt to terminate the DVD License and the ineffectiveness of such termination are relevant to the Court's consideration of the motion to stay as they demonstrate, *inter alia*, that Toshiba's real dispute is with Citron and not CyberHome, the Court need not consider such facts when ruling on the instant motion to dismiss or transfer.

- 5 -

¶ 14.  The notice provided to Citron by Toshiba of the alleged material breach, however, failed to delineate the nature of the material breach with the requisite specificity  required by Section 5.3 of the DVD License, and more importantly, it failed to invoke the proper provision and mechanism (i.e. audit right) as provided in the DVD License for confirming any alleged underreporting of royalties, which was the subject of Toshiba's claim of material breach.  Carroll Decl., ¶¶ 15, 16.

In response to the July 20 correspondence, on or about August 8, 2005, James J. Carroll notified Toshiba that although Citron believed its royalty payments were in compliance with the DVD License, Citron needed additional information to determine whether certain DVD recordable drives were covered by the DVD Patents.  Mr. Carroll further stated that Citron was willing to pay royalties on these devices if such payments were determined to be due under the DVD License and that Citron would like to discuss the matter further with Toshiba to reach a resolution.  In addition, with respect to any additional royalties due and owing as well as certain deficiencies in reporting requirements claimed by Toshiba, Citron restated its position that it was in compliance with the DVD License.  Finally, Citron requested that Toshiba work with Citron to resolve any issues relating to Toshiba's claim that Citron breached the DVD License and Toshiba's decision to purportedly terminate such agreement.  Carroll Decl., ¶¶ 17, 18.

Toshiba, however, was unyielding in its demands for Citron to cure the alleged defaults in their entirety by August 19, 2005 - the claimed termination date.  Caroll Decl., ¶ 19.  After additional discussions between Citron and Toshiba proved to be unavailing, left with little choice, Citron was forced to concede to Toshiba's demand regarding royalties due under the DVD License.  At this time, Citron and Toshiba agreed to discuss the alleged breach and threatened termination, and Toshiba agreed to suspend its

anticipated termination and, correlatively, Citron's time to cure, in order to facilitate the parties' discussions. *Id.*, ¶¶ 20, 21. On August 23 and 24, 2005, representatives of Citron and Toshiba met in person to discuss their licensing dispute. *Id.*, ¶ 22.

On September 1, 2005, Citron tendered a full cure of the alleged breach under the DVD License by offering full payment of all royalties that Toshiba previously alleged were due under the DVD License, but remained unpaid as well as interest for the alleged underpayment. Carroll Decl., ¶ 23. Despite Citron's unconditional and full tender of amounts allegedly due under the DVD License, Toshiba "terminated" the DVD License on October 31, 2005, without good cause and any legal basis to do so, and without any written notice as to the alleged inadequacy of Citron's tender. *Id.*, ¶ 24. Toshiba purported to terminate the DVD License retroactively, effective August 19, 2005. *Id.*

The same day it purported to terminate Citron's DVD License, Toshiba sued Citron's "affiliate" CyberHome for patent infringement.

To protect its rights under the DVD License, Citron instituted suit in the District Court for the Southern District of New York (the "New York Action") on December 19, 2005. Carroll Decl., ¶ 26, Ex. B. In the New York Action, Citron seeks declaratory relief that (i) various patents asserted in this action are not infringed and are invalid or unenforceable, (ii) Citron did not breach the DVD License, (iii) Citron was not provided with the requisite notice of the purported material breach required by the DVD License to effectuate termination of that license, and (iv) the DVD License was not validly terminated. In addition, Citron seeks damages and injunctive relief for Toshiba's breach of the DVD License.

## ARGUMENT

**I.    TOSHIBA'S AGREEMENT TO LITIGATE ALL DVD LICENSE DISPUTES IN NEW YORK REQUIRES DISMISSAL OF THIS CASE.**

Toshiba cannot credibly deny that it agreed to litigate *all* disputes between it and Citron "arising out of or in connection with the interpretation or execution" of the DVD License in state or federal court in New York.  Carroll Decl., Ex. A, ¶ 6.4.  Nor can Toshiba credibly dispute that the benefit of such forum selection clause inures to CyberHome, as Citron's affiliate.  *Id.*, at ¶ 6.5 (License "inure[s] to the benefit" of the parties "and each of their respective Affiliates.")  Toshiba should be held to its agreement and its complaint against CyberHome should be dismissed under Fed.R.Civ.P. 12(b)(6).[5]

It is axiomatic that contractual forum selection clauses are prima facie valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  Moreover, forum selection clauses in international contracts are accorded special deference due to the "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985).  Thus, Courts routinely enforce forum selection clauses unless such enforcement would  put any of the parties at a substantial and unfair disadvantage or otherwise deny a litigant his day in court. *See Process and Storage Vessels v. Tank*, 541

---

[5]    As to the correct rule for enforcing forum selection clauses, this Court has recognized there is "much disagreement over whether dismissal (where appropriate) should be made pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(3), or 12(b)(6)." *Salovaara v. Jackson National Life Ins. Co.*, 246 F.3d 289, 298 at n.6 (3d Cir. 2001).  However, there is no doubt that a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum." *Id.* at 298 (citing *Crescent Int'l Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (affirming dismissal of case under Rule 12(b)(6) based on forum selection clause)).

- 8 -

F. Supp. 725, 733 (D. Del. 1982), *aff'd,* 760 F.2d 260 (3d Cir. 1985) (citing *M/S Bremen,*
407 U.S. at 15).

In the Third Circuit, a forum selection clause is presumptively valid and will be
enforced unless the objecting party establishes: (i) it is a result of fraud or overreaching;
(ii) enforcement would violate a strong public policy of the forum; or (iii) enforcement
would, in the particular circumstances of the case, result in litigation in a jurisdiction so
seriously inconvenient as to be unreasonable. *See Coastal Steel Corp. v. Tilghman
Wheelabrator, LTD.,* 709 F.2d 190, 202 (3d Cir. 1983) (binding non-signatory third party
beneficiary to forum selection clause in underlying contract), *overruled on other grounds,*
*Lauro Lines v. Chasser,* 490 U.S. 495 (1989).

Here, Toshiba has no basis for challenging the validity of its forum selection
clause. First, Toshiba drafted the DVD License and declared its terms non-negotiable. In
the license it drafted, Toshiba agreed to litigate "[a]ll disputes" "arising out of or in
connection with" interpretation or execution of the DVD License in New York.[6] It
cannot claim fraud or overreaching on Citron's part, or violation of an important public
policy. Nor can Toshiba claim that enforcement of the venue provision would put it at a
substantial and unfair disadvantage or deny Toshiba its day in court. Indeed, the pending
New York Action instituted by Citron against Toshiba - including claims entwined with
those set forth in the instant action - is the proper forum for this dispute.

Likewise, Toshiba's U.S. headquarters are located in New York, Toshiba's
operating company with responsibility for DVD Players is located in near-by Wayne,

---

[6]  "[A]ll disputes the resolution of which arguably depend upon the construction of
an agreement 'arise out of' that agreement" for purposes of a forum selection
clause. *Omron Healthcare, Inc. v. Maclaren Exps., Ltd.,* 28 F.3d 600, 603 (7th
Cir. 1994).

- 9 -

New Jersey, and CyberHome alleged infringing DVD players are sold in New York.
Further, Foley & Lardner LLP, counsel to Toshiba in this proceeding, has New York (but
not Delaware) offices.  Wytsma Decl., ¶ 4.  For all of these reasons, Toshiba will not face
any disadvantage if it must litigate its claims in the New York Action.

Moreover, any argument against enforcement of the venue provision because
CyberHome is not a signatory to the DVD License is without merit.  Plaintiffs cannot
escape contractual obligations simply by suing parties who did not sign the contract and
then claiming that the forum selection clause does not apply.  *See Hugel*) *v. Corp. of
Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993).  As an "Affiliate" of Citron, the DVD
License's benefits explicitly inure to CyberHome.  Carroll Decl., Ex. A, ¶ 6.5.  Moreover,
parties that are "closely related" to the dispute also may be bound to a forum selection
clause.  *Id.* at 209; *See also Jordan v. SEI Corporation,* No. Civ. A. 96-1616, 1996 WL
296540, at *7-8.  (E.D.Pa. June 4, 1996); *Hay Acquisition Company I, Inc. v. Schneider,*
No. Civ. A. 2:04-CV-1236, 2005 WL 1017804, at *8-9 (E.D.Pa. April 27, 2005).

Whether as an "Affiliate," third-party beneficiary, or party "closely related" to the
DVD License, CyberHome has standing to enforce the agreement's venue provision.
*See, e.g., Jordan v. SEI Corporation,* 1996 WL 296540, at *7-8; *Hadley v. Shaffer*, No.
Civ. A. 99-144, 2003 WL 21960406, at *6-7 (D. Del. Aug. 12, 2003).  Because Toshiba's
prosecution of this case in Delaware violates the forum selection clause in the DVD
License, this case should be dismissed in its entirety.  *See Salovaara*, 246 F.3d at 299-300
(affirming dismissal of complaint to enforce forum selection clause requiring lawsuits to
be filed in state courts of New York County or District Court for the Southern District of
New York).

## II.    TOSHIBA'S AGREEMENT TO LITIGATE AGAINST CITRON IN NEW YORK, AS WELL AS THE PARTIES' CONVENIENCE AND THE INTERESTS OF JUSTICE, SUPPORT A TRANSFER OF THIS CASE

A district court, for the "convenience of parties and witnesses" and "in the interest of justice," may transfer a case to any other district where it might have been originally brought.  28 U.S.C. § 1404(a).  The purpose of this venue statute is to prevent waste of time, energy, and money, as well as to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *See Van Dusen v. Barrack*, 376 U.S. 612 (1964).

Analysis under § 1404(a) is a two-step inquiry: (1) whether the suit could have been filed in the transferee district; and (2) in which district the proper administration of justice would be best served.  *See Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 762 (D. Del. 1991).  Delaware courts have characterized the first inquiry as mechanical and the second as discretionary.  *Id.*

Here, there is no question as to the first inquiry: Toshiba might have brought its suit in the Southern District of New York.  Toshiba's United States headquarters are in New York, New York, and CyberHome accused DVD players are sold there as well. Indeed, as noted above, Toshiba has explicitly consented to the jurisdiction of New York's courts for disputes related to the patents-in-suit.  Carroll Decl., Ex. A, ¶ 6.5.

As to the second inquiry – "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum" – a multi-factored balancing test is applied.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  The private interests a court should consider in deciding a venue motion are (1) plaintiff's choice of forum; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative

- 11 -

physical and financial condition; (5) the convenience of the witnesses to the extent they

may be unavailable for trial in one of the fora; and (6) the location of books and records

(again, to the extent they could not be produced in the alternative forum). *Id.* at 879.

*Accord Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600 (D. Del. 2004).

The public interests the court should consider include: (1) the enforceability of the

judgment; (2) practical considerations that could make the trial easy, expeditious, or

inexpensive; (3) the relative administrative difficulty in the two fora from court

congestion; (4) the local interest in deciding local controversies at home; (5) the public

policies of the fora; and (6) the familiarity of the trial judge with the applicable state law

in diversity cases. *Jumara,* 55 F.3d at 879-80.

Here, both private and public factors overwhelming support transferring this case

to New York.

A.    **The Private Interests Here Support a Transfer.**

1.    **Toshiba Is Bound by Its Forum Selection Clause**

Although this case can and should be dismissed under Rule 12(b)(6), the venue

provision in the DVD License also supports a discretionary transfer of this case under 28

U.S.C. § 1404. *See Salovaara*, 246 F.3d at 299 (court may transfer rather than dismiss

case "when venue is proper but the parties have agreed upon a not-unreasonable forum

selection clause that points to another federal venue"). In the DVD License, Toshiba

explicitly "waive[d] any objection" to settling all disputes arising out of the interpretation

of the DVD License in the Southern District of New York. Carroll Decl., Ex. A, 6.4.

There is no basis for any objection to that venue now.

### 2.     Toshiba's Forum Preference Lacks a Rational or Logical Basis, Particularly Given Its Prior Agreement to Litigate Licensing Disputes with Citron in New York.

While a plaintiff's chosen venue is entitled to judicial deference, the "preference in favor of plaintiffs' choice of forum is not adopted blindly or without reason." *Clopay Corp. v. Newell Cos., Inc.*, 527 F. Supp. 733, 736 (D. Del. 1981).[7] Rather, "[c]ourts expect that plaintiffs' choices will generally reflect their rational and legitimate concerns." *Id.*; *accord Waste Distillation*, 775 F. Supp. at 764. Thus, in analyzing whether to disturb a plaintiff's initial venue decision, courts focus on whether a plaintiff's choice of forum reflects rational and legitimate concerns. *See Burstein v. Applied Extrusion Technologies*, 829 F. Supp. 106, 110 (D. Del. 1992).

In this case, however, Toshiba's choice is not rational. Indeed, it is unclear why this plaintiff would not prefer to send its employees and witnesses to the district court in New York (a mere few miles from its U.S. headquarters), rather than in excess of 125 miles away to another state with all the attendant costs of transportation and lodging. It is also unclear why Toshiba would select a venue in which its primary counsel, Foley & Lardner, does not have any offices, thus requiring additional expenses to retain local counsel. Certainly it is not because the local bench in the Southern District of New York is unfamiliar with patent law or sophisticated technology.

A plaintiff's failure to litigate on its "home turf" is a factor bearing on a decision to transfer. When "the plaintiff has chosen to bring suit in a district that is not his 'home turf' and which has no connection to any acts giving rise to the lawsuit, convenience to

---

[7]     *Clopay*, also a patent case, is particularly instructive here given its nearly identical facts. As here, the plaintiff alleged no contact with Delaware, and the facilities, witnesses and documents were all located in other states. Thus, the district court transferred the *Clopay* case to the Northern District of Illinois.

- 13 -

the plaintiff is 'not as great as it would be were he litigating at or near plaintiff's principal

place of business or at the site of activities at issue in the lawsuit.'" *Burstein*, 829 F.

Supp. at 110.

Bearing significantly on the "logic" of Toshiba's chosen venue is Toshiba's own

agreement to litigate disputes concerning the DVD License in the courts of New York

and to waive any inconvenience objection. *See TCW/Camil Holding LLC v. Fox Haron*

*& Camerini LLP*, 2004 WL 1043193, at *2 (D. Del. Apr. 30, 2004) (defendant's prior

statements considered in deciding transfer motion; "Given its prior contention, defendant

now cannot attempt to turn the table and argue for a transfer").

CyberHome's alleged infringement in this case turns (in the first instance) on a

contractual dispute governed by New York law and which must be litigated in New York.

Having previously taken the position that all disputes between the parties over the DVD

Products Citron manufactures for CyberHome must be litigated in New York, it is

difficult to understand why Toshiba decided to file suit against CyberHome in Delaware.

Certainly there are no rational or logical reasons for doing so.

### 3.    CyberHome Prefers To Litigate in New York, Where Citron and Toshiba Must Litigate a Related Contract Dispute.

CyberHome prefers the Southern District of New York for the same reasons that

would seemingly guide Toshiba to that conclusion. CyberHome would prefer to avoid

the expense of local counsel. CyberHome would prefer to avoid paying for its attorneys'

travel time to Delaware. CyberHome would prefer to litigate in a venue closer to the

witnesses. CyberHome would prefer to litigate in the same city where its manufacturer

and Toshiba will be litigating a related contract dispute. CyberHome would prefer to

conserve resources by litigating all related disputes in one action. CyberHome would

prefer to litigate in a venue that its overseas witnesses can reach by direct international

- 14 -

064833.1001

flight. Indeed, given that Toshiba is a Japanese company with its U.S. headquarters in New York City, one wonders why Toshiba would not prefer to litigate in New York.

### 4. The Convenience of the Parties and the Location of Books and Records.

Unlike in some cases, here it is more convenient for *both* parties to litigate in New York, Toshiba's "home turf" in the United States.

Toshiba is headquartered in Japan; the named inventors are located in Japan; and Toshiba's U.S. headquarters are located in New York. Wytsma Decl., ¶¶ 2,3, Exs. A, B. Toshiba does not have any regular or established office, employees, manufacturing plants, or distribution facilities or other corporate presence relevant to this lawsuit in Delaware. Wytsma Decl., ¶¶ 2, 3, 5, 6, 7. CyberHome is not aware of any employees or fact witnesses located in Delaware.

CyberHome is unaware of any relevant business records or tangible evidence maintained in Delaware. Carroll Decl., ¶ 3. However, all the documents and witnesses which must be produced concerning CyberHome's license defense must be produced in New York, where Citron and Toshiba must litigate their licensing dispute. Thus, *both* parties will save money by avoiding the costs associated with local counsel and producing the same documents and conducting the same discovery in two different actions.

The absence of any significant corporate presence or relevant personnel or documents in Delaware is a significant factor in weighing a requested transfer. *See Ricoh Co. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) ("no party maintains any facilities, personnel, or documents in Delaware"); *Mentor Graphics Corp. v. Quickturn Design Systems*, 77 F. Supp. 2d 505, 509 (D. Del. 1999) (noting "[n]either party has any facilities, property, or employees located in the state of Delaware" in granting motion to

- 15 -

transfer case to California). The "regional character of the parties," particularly
Toshiba's "primary business operations" in New York, is an "exceptional" circumstance
supporting transfer here. *Arrow Communication Laboratories, Inc. v. John Mezzalingua
Associates, Inc.*, No. Civ. 05-375, 2005 WL 2786691, at*4 (D. Del. Oct. 26, 2005)
(granting motion to transfer first-filed patent infringement case to New York).

      However, even if there were reasons making New York less convenient for
Toshiba, Toshiba relinquished any such argument in the DVD License, wherein it
"waive[d] any objection that it may now or hereafter have to ... the convenience or
inconvenience of conducting or pursuing **any action or proceeding** in any such court."
Carroll Decl., Ex. A, ¶ 6.4 (emphasis added).

<h3 style="text-align:center">5.    Convenience of the Witnesses</h3>

      The convenience of witnesses is relevant only to the extent that nonparty
witnesses may be unavailable for trial in one of the fora. *See Jumara*, 55 F.3d at 879.
While out-of-state or foreign third-party witnesses may well prove important in this case,
"this court has no more subpoena power over these men than would a [court located in
the Southern District of New York]." *Mentor Graphics*, 77 F. Supp. 2d at 512.
Moreover, there are no facts here that suggest third-party witnesses, particularly those
located overseas, would find travel to Delaware more convenient than travel to New York
via three airports closely situated to New York City with international flight service.

      Absent "relevant third-party witnesses" residing in Delaware, this factor, to the
extent it has any bearing here, supports a transfer. *See Ricoh*, 279 F. Supp. 2d at 558
(noting "no relevant third-party witnesses ... reside in Delaware" as factor relied on in
granting motion to transfer).

- 16 -

B.    **Public Interests Weigh In Favor of Transferring this Case**

1.    **Practical Considerations Facilitating Trial Favor Transfer**

The discussion of the private factors above demonstrates the practical considerations that would make trial easier, less expensive and more expeditious in New York. Among other reasons, both parties would be able to more fully coordinate their prosecution and defense of two, related actions if litigated in the same city; both parties would avoid the costs associated with two proceedings and duplicative discovery; both parties would avoid the expense of local counsel during a lengthy patent trial; both parties would have access to direct international flights for its foreign witnesses; both parties would have greater access to their counsel's offices. *See Mentor Graphics*, 77 F. Supp. 2d at 510 n.7 (noting transfer would eliminate "added expense of local Delaware counsel" and reduce "travel expenses").

2.    **Relative Administrative Burden Favors a Transfer**

The 2004 numbers from the Federal Courts Management Statistics, available at http://www.uscourts.gov/cgi-bin/cmsd2004.pl, demonstrate that Toshiba is likely to get as quick a resolution in New York as in Delaware.[8] If anything, the numbers suggest a quicker resolution in the Southern District of New York; according to the statistics, Delaware had 534 "weighted filings" per judgeship in 2004 and a 14.0 month average disposition time in civil cases, while the Southern District had 527 "weighted filings" per judgeship in 2004 and 8.1 months average time to disposition in civil cases. Statistics vary "from year to year and can be affected by a variety of factors." *Mentor Graphics*,

---

[8]    The statistics are reproduced with CyberHome's appendix of unreported authorities appended hereto.

77 F. Supp. 2d at 514.  The statistics here bear "only slightly," if at all, on the requested

transfer.  *Id.* (granting motion to transfer Delaware action to California).

While general district congestion may not tip decidedly in either direction, the

relative judicial burden on the two district courts does factor largely here.  As recognized

by the "customer suit exception" to the first-filed rule, it is more efficient for a patent

dispute to be settled directly between the parties in interest.  *See Katz v. Lear Siegler,*

*Inc.*, 909 F.2d 1459, 1464 (Fed.Cir. 1990); *Whelen Tech., Inc. v. Mill Specialties, Inc.*,

741 F. Supp. 715, 716 (N.D. Ill. 1990) (noting that the manufacturer is presumed to have

a greater interest in defending its actions against charges of patent  infringement.); *Ricoh,*

279 F. Supp. 2d at 557-8   The rule acknowledges that a patentee's election to sue

customers, rather than the manufacturer itself, is often based on a desire to intimidate

smaller businesses.  *Id.* at 557 (*citing Kahn v. General Motors, Corp.*, 889 F.2d 1078,

1081 (Fed. Cir. 1989)).

Here, Toshiba's suit against CyberHome will not settle the controversy between

the real parties in interest.  To determine whether CyberHome infringes the patents in

suit, a district court must first resolve Toshiba's license dispute with Citron.  Because

CyberHome must plead the issue as an affirmative defense, the license defense should be

raised in this suit, as well.  However, because Citron *must* litigate its license dispute with

Toshiba in New York, the issue cannot be avoided by a district judge in New York.

Thus, two district courts will be confronted with the same issues, which include,

among others:  whether the DVD License was terminated, and, if so, whether that

termination was improper.[9]  If there was no termination or the termination was improper,

---

[9]     Both this case and Citron's suit are in their infancy.  As such, neither district court
        has a particular familiarity with the underlying issues in this case.  *See Ricoh,* 279

- 18 -

then Citron's "affiliate" CyberHome is licensed to make, use or sell its DVD players. There is no judicial efficiency in having two district courts deciding the same legal issues. *Arrow*, 2005 WL 2786691, at *4 (noting related matter involved "same subject matter" in considering public interest factors and granting motion to transfer patent case to New York); *Mentor Graphics*, 77 F. Supp. 2d at 513 (noting "some overlap in the parties, technologies, and accused products" between actions in granting motion to transfer). Because the dispute between Toshiba and Citron must be resolved in New York, there is no reason to foist the same burden on this Court. To avoid certain judicial duplication and possible judicial inconsistencies, a transfer is warranted.

A transfer would also serve judicial economy by avoiding a potential dispute as to personal jurisdiction. Citron, a Hong Kong manufacturer which exports to a California company, is not subject to personal jurisdiction in Delaware. *See C.R. Bard Inc. v. Guidant Corporation*, 997 F. Supp. 556, 561 (D. Del. 1998) (Delaware court lacked personal jurisdiction over foreign parent corporation in patent infringement suit); *see also Davlyn Manufacturing Co., Inc.*, 2005 WL 2012071, at *9 (manufacturer of oven gasket who did not directly ship any goods into the forum was not subject to personal jurisdiction of the courts even if it had a general awareness that its products would end up in the state; manufacturer had no control over the eventual destination of its products and had taken no purposeful steps to avail itself of the protections of the forum.) Yet it has important interests to protect here. Thus, it is faced with the untenable position of being unable to defend itself here unless it surrenders personal jurisdiction of this Court. A

---

F. Supp. 2d at 558 (noting "both the present case and the case in the [Southern District of New York] are in the relatively early stages of litigation" in granting motion to transfer).

- 19 -

transfer that obviates a jurisdictional question further serves "judicial economy and the interests of justice." *Mentor Graphics*, 77 F. Supp. 2d at 512, 513.

### 3.    Local Interest in this Controversy Favors Transfer

There is no local interest in this case. Neither party is headquartered or even incorporated here. The claimed inventions were not conceived here. The named inventors do not reside here. The incidents leading to allegations of patent infringement did not occur here. While there is certainly an interest in having local controversies decided locally, there are no local controversies to resolve here. There is no reason to burden the Delaware bench with yet another patent case involving parties to a contract dispute having no connection to Delaware.

### 4.    Expertise of Local Judges

*Jumara* requires consideration of a trial judge's familiarity with the applicable state law in diversity cases. 55 F.3d at 879-80. As stated previously, in order for this Court to determine whether CyberHome infringed the patents at issue, the court in the New York Action must first resolve Citron's license dispute with Toshiba.[10] The contractual issues relating to that dispute must be determined under New York law as mandated by Section 6.3 of the DVD License. The DVD License provides that it "shall be governed and construed according to the laws of New York, as if this Agreement were wholly executed and wholly performed within New York," without any regard to conflicts of laws principles. Carroll Decl., Ex. A, ¶ 6.3.

---

[10]    If Citron is licensed under the patents-in-suit, its "customers would then be immunized from liability." *See Ricoh Co.*, 279 F. Supp.2d at 558 (noting that decision regarding infringement and validity of patent in California case against manufacturer would "efficiently dispose of the infringement issues" regarding manufacturer's customers).

- 20 -

To the extent that most, if not all, of Toshiba's patent infringement claims will be resolved by judicial interpretation of the DVD License, this *Jumara* factor weighs heavily in support of a transfer to the Southern District of New York, where the district judges have more experience interpreting contracts under New York law.

\* \* \*

CyberHome has sustained its burden "to establish that the balance of the convenience of the parties and witnesses strongly favors the defendant[]." *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981). This is not the typical motion where one party attempts to simply shift the burden of one inconvenient forum to another or upset the plaintiff's choice in venue. To the contrary, transferring this case to New York will only implement a choice Toshiba itself made and to which it should be held accountable.

For the compelling reasons discussed above, this case can and should be transferred to the Southern District of New York.

## III.    THIS CASE SHOULD BE STAYED PENDING A RESOLUTION OF TOSHIBA'S CONTRACTUAL DISPUTE WITH CITRON

### A.    Patent Infringement Actions Should Be Filed Against the "True" Defendants -- Manufacturers Controlling Product Design.

Courts in patent infringement cases often stay litigation against the alleged infringer's customers and require the patent owner to litigate against the provider of the allegedly infringing product or service. *See, e.g., Ambrose v. Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871 (N.D. Ill. Jul. 3, 2002) (staying action against codefendant reseller and maintaining action against primary defendant manufacturer) (citing *LG Electronics Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D.N.J. 2001)); *Gold v. Burton Corp.*, 949 F. Supp. 208 (S.D.N.Y. 1996); *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1478 (N.D. Ga. 1992); *Coulter Electronics, Inc. v.*

- 21 -

*SmithKline Corp.*, 219 U.S.P.Q. 135, 136-37 (N.D. Ill. 1982)) (staying actions against

customers of defendant manufacturer); *see also Whelen Tech.*, 741 F. Supp. at 716

(staying patent infringement action against defendant who was "merely the re-seller of

the goods initially produced by Tomar Electronics"); *Emhart Indus. v. Universal*

*Instrument Corp.*, No. 88 C 4960, 1988 WL 121538, at *1 (N.D. Ill., Nov. 4, 1988)

(staying action against the "customer [of] the designer, manufacturer and seller of the

allegedly infringing device").

 As these cases have recognized, "[i]t is common practice to stay all pending

[patent] litigation except the first suit between the patent owner and a manufacturer or a

higher level supplier." *Commissariat a L'Energie Atomique v. Dell Computer Corp.*,

C.A. No. 03-484-RAS, 2004 WL 1554382, at *3 (D. Del. May 13, 2004) (quoting David

F. Herr, *Annotated Manual for Complex Litigation,* § 33.63 (3d ed. 2003)). There is no

"compelling reason why the case against the retailers should proceed in lockstep with the

cases against the manufacturers." *Id.* at *2 (refusing to "consolidate the retailer action

with the manufacturer cases" in patent infringement case). To the contrary, the well-

established "customer-suit" doctrine provides a compelling reason to stay actions against

customers of the primary, manufacturer defendant. That doctrine holds that "litigation

against or brought by the manufacturer of infringing goods takes precedence over a suit

by the patent owner against customers of the manufacturer." *Katz*, 909 F.2d at 1464.

 Under the customer-suit doctrine, even if the first-filed action is against

customers, it will be stayed in favor of adjudicating an action against the manufacturer.

*Whelen Tech.*, 741 F. Supp. at 715. As one district court recently observed,

> Underlying the customer-suit doctrine is the preference that
> infringement determinations should be made in suits
> involving the true defendant in the plaintiff's suit, i.e., the

- 22 -

> party that controls the product's design, rather than in suits
> involving secondary parties, i.e. customers.

*Ciena Corp. v. Nortel Networks Inc.*, 2005 WL 1189881, at *9 (E.D. Tex., May 19, 2005)

(citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)); *see also*

*ATSPI, Inc. v. Sharper Image, Inc.*, 677 F. Supp. 842, 843 (W.D. Pa. 1988) ("the

manufacturer or supplier of an accused device . . . is the true defendant in a customer

suit"; granting stay).

    The courts have articulated numerous reasons for this preference including:

- "Manufacturers are intimately involved in the design, operation, and use of the accused [products]." *Commissariat*, 2004 WL 1554382, at *3.

- "[I]t is more efficient for the dispute to be settled directly between the parties in interest." *Ricoh*, 279 F. Supp.2d at 557.

- A manufacturer has a "greater interest in defending its actions against charges of patent infringement." *Whelen Tech.*, 741 F. Supp. at 715 (citing *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)).

- "[A] manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Codex*, 553 F.2d at 738.

    Accordingly, as set forth below, this suit should be stayed until the conclusion of

the New York Action -- the litigation involving the true parties in interest to this patent

dispute.

### B.    Staying This Action Will Serve The Interests Of Judicial Economy.

    This Court has broad discretion when deciding whether to stay proceedings. *See*

Fed. R. Civ. P. 42(a).  "[T]he power to stay proceedings is incidental to the power

inherent in every court to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants." *Landis v. North*

*American Co.*, 299 U.S. 248, 254-55 (1936); *Mobil Oil Corp. v. W.R. Grace & Co.*,  334

F. Supp. 117, 121 (S.D. Tex. 1971) ("This Court has the power to sever the claims

- 23 -

against properly joined defendants . . . and to stay the proceedings as to one of them"). On a motion to stay, the Court considers (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *Commissariat*, 2004 WL 1554382, at *1.

This case just commenced; discovery has not yet been conducted - much less completed - and no trial date has been set. CyberHome "is requesting this stay relatively early in the litigation, as discovery has ... [not] begun. A stay of this case will therefore conserve judicial and party resources by avoiding potentially needless and expensive discovery." *Novartis Corp. v. Dr. Reddy's Labs., Ltd.*, No. 04 Civ. 0757 (SAS), 2004 WL 2368007, at *3 (S.D.N.Y., Oct. 21, 2004).[11] Toshiba cannot demonstrate any prejudice or serious tactical disadvantage that it would suffer if this case is stayed. Indeed, staying this case will streamline the parties' actual controversy and conserve judicial resources.

As the customer suit cases discussed *supra* observe, Citron is in the best position to defend CyberHome against Toshiba's infringement allegations. A resolution of the dispute between Citron and Toshiba will possibly obviate Toshiba's claims and certainly simplify the issues here.

There is no valid reason for the Court and parties to undertake a complicated, expensive patent litigation until the true dispute between Toshiba and Citron is resolved.

---

[11]    *Compare Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660 (E.D. Tex. 2005) (where case had been pending for a year, discovery almost complete, a *Markman* hearing had been held, and case was "rapidly moving toward trial," court denied defendant's belated motion to stay action pending reexamination of patent by Patent and Trademark Office).

- 24 -

## CONCLUSION

For the foregoing reasons, CyberHome respectfully requests the Court to enforce the forum selection clause in Toshiba's DVD License with Citron by dismissing this case under Fed.R.Civ.P. 12(b)(6) or, alternatively, transferring the case to the Southern District of New York under 28 U.S.C. § 1404. Absent dismissal or transfer of this case, this case should be stayed pending a resolution of Toshiba's license dispute with Citron.

Respectfully submitted,

_____

John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Defendant*
*CyberHome Entertainment, Inc.*

OF COUNSEL:

Joel N. Bock
SONNENSCHEIN NATH & ROSENTHAL LLP
101 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078
jbock@sonnenschein.com

Laura A. Wytsma
SONNENSCHEIN NATH & ROSENTHAL LLP
601 S. Figueroa Street, Suite 1500
Los Angeles, California 90017
lwytsma@sonnenschein.com

- 25 -

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 21, 2005, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Steven Balick, Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899

I further certify that I caused a copy of the foregoing document to be served by

hand delivery on the above-listed counsel of record and on the following non-registered

participant in the manner indicated:

### BY FEDERAL EXPRESS

> John J. Feldhaus, Esquire
> Foley & Lardner LLP
> Suite 500
> Washington Harbour
> 3000 K Street, N.W.
> Washington, DC  20007-5109

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _____
> John W. Shaw (No. 3362)
> *jshaw@ycst.com*
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19801
> (302) 571-6600