Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 121538 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

▷
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
EMHART INDUSTRIES, INC., Plaintiff,
v.
UNIVERSAL INSTRUMENTS CORPORATION
and Tellabs, Inc., Defendants.
**No. 88 C 4960.**

Nov. 4, 1988.

PLUNKETT, District Judge.

MEMORANDUM OPINION AND ORDER

*1 Plaintiff Emhart Industries, Inc. brings suit
against Defendants Universal Instruments
Corporation and Tellabs, Inc. alleging patent
infringement. Universal manufactures the alleged
infringing device (a "sequence verifier"), and
Tellabs uses four such devices purchased from
Universal. Currently before us is Universal's
motion, in which Tellabs joins, for an order 1)
severing Plaintiff's claim against Universal from the
claim against Tellabs, 2) staying the action against
Tellabs, and 3) transferring the action against
Universal to the Northern District of New York
pursuant to 28 U.S.C. 1404(a). For the reasons set
forth below, the motion is granted.

*Discussion*

Emhart is a Connecticut corporation with its
principal place of business in Farmington,
Connecticut; Universal is a Delaware corporation
with its principal place of business in Binghamton,
New York and a sales office employing ten or
eleven sales people in Algonquin, Illinois; and
Tellabs is an Illinois corporation with its principal
place of business in Algonquin, Illinois. A suit
alleging patent infringement may be brought

in the judicial district where the defendant resides,
or where the defendant has committed acts of
infringement and has a regular and established place
of business.

28 U.S.C. 1404(b). Venue is proper in this district
because both Defendants are alleged to have
committed infringing acts in the district and have
established places of business here. However, 28
U.S.C. 1404(a) provides that

[f]or the convenience of parties and witnesses, in
the interest of justice, a district court may transfer
any civil action to any other district or division
where it might have been brought.

Because Tellabs neither has a place of business in
the Northern District of New York nor is alleged to
have committed infringing acts there, the entire
action cannot be transferred to New York.
However,

[I]f ... the case ... could have been brought against
some defendants in the court to which transfer is
sought, the claims against those defendants may be
severed and transferred while the claims against the
remaining defendants, for whom transfer to that
district would not be proper are retained in the
original court.

Wright & Miller, Federal Practice and Procedure,
Section 3845 at 351-52; *see, e.g., Coulter
Electronics, Inc. v. Smithkline Corp.,* 219 U.S.P.Q.
135 (N.D.Ill.1982); *Burroughs Corp. v. Newark
Electronics Corp.,* 317 F.Supp. 191 (N.D.Ill.1970).
Such a procedure is proper where the defendants
who cannot be transferred are only secondarily
involved in the action. *Id.*

We think that Tellabs' involvement in this action is
indeed peripheral, and that this case is a suitable
candidate for severance and transfer if we find that
the Northern District of New York is a more
appropriate forum for the case against Universal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 121538 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

than is the Northern District of Illinois. Tellabs is merely a customer of Universal, which is the designer, manufacturer and seller of the allegedly infringing device. Moreover, Universal has agreed to indemnify Tellabs for any liability resulting from this action, and Tellabs has agreed to be bound by the decision on the merits of the Emhart-Universal action. Thus, severing and staying the action against Tellabs would not produce a multiplicity of litigation.

*2 We now turn to the question whether the Northern District of New York is an appreciably more convenient forum for this action than the Northern District of Illinois. The factors in favor of transfer are as follows. All of Universal's corporate offices, research and design facilities, and manufacturing plants are located in Binghamton. Thus, the people most knowledgeable about Universal's business operations and the development of the allegedly infringing product-many of whom are probable witnesses at trial-are in Binghamton. Were this action to be heard in Chicago, Universal would be substantially burdened in that many key employees would have to be 750 miles from the home office at the same time. Furthermore, the documents most important to this suit are also in Binghamton.

We find these factors to be of great weight. *See Spound v. Action Industries, Inc.,* 369 F.Supp. 1066, 1069 (N.D.Ill.1974) (convenience best served when patent case prosecuted where alleged acts of infringement occurred and defendant has its records). Of course, transfer is not appropriate where it will simply shift the inconvenience; the defendant must show that the original forum is inconvenient for it, *and* that the plaintiff would not be significantly inconvenienced by the transfer. Wright & Miller, *supra,* Section 3849 at 407-08. We think Universal has made this showing. Chicago is surely an inconvenient forum for it, while Binghamton is convenient. Emhart, however, will be inconvenienced regardless of whether this suit is heard in Chicago or Binghamton, for Emhart employees whose testimony is needed will spend a substantial period traveling to either place. [FN1]

Emhart raises several arguments in opposition to transfer, none of which we find persuasive. [FN2] They first argue that testimony of Tellabs' personnel is critical on the issues of long-felt need, commercial success, and damages, because Tellabs has "greater experience" with the sequence verifier than do others in the same business. We do not think that Tellabs' employees are uniquely qualified to testify on these issues, however, simply because Tellabs has four machines rather than only one. We see no reason why other users of sequence verifiers cannot give similar testimony. [FN3] Emhart also argues that other important witnesses are located in the Chicago area. Three of these witnesses, however, are paid experts or consultants. These witnesses will presumably be willing to testify regardless of the trial's location-or else Emhart can simply secure other experts willing to testify in New York. Another witness, Richard Megley, is the former patent counsel for Emhart's predecessor. He is not said to be a hostile witness, and presumably will be willing to testify for Emhart in New York. Emhart also lists as witnesses (in regard to alleged copying of Emhart operating manuals owned by RCA) employees or former employees of Universal's Algonquin, Illinois plant and RCA employees located in Bloomington, Indiana. Many of these Universal employees, however, are now located in Binghamton, and the RCA employees in Indiana are outside the subpoena power of this court. Therefore, this factor is not persuasive. Emhart also states that access to machines made by both Emhart and Universal is better in Chicago than in the Northern District of New York, and the jury can thus easily compare the two. In this regard, we note that Plaintiff elsewhere states that the machines operate extremely quickly and it thus plans to engage a film-maker to produce a film (which can of course be slowed down) for jury comparison. Thus, a jury view of the actual machines would not seem to be terribly crucial. Finally, Emhart points out that the case can be tried more expeditiously here than in the Northern District of New York. We do not, however, accord great weight to this factor, particularly where the difference in median time to trial is a matter of months. [FN4]

*3 In sum, we find that Emhart will not be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3

Not Reported in F.Supp., 1988 WL 121538 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

significantly inconvenienced by a transfer to the
Northern District of New York, while New York
will be much more convenient for Universal than
Chicago, and will afford superior access to the key
witnesses and evidence. Therefore, transfer to the
Northern District of New York is warranted.

### Conclusion

For the foregoing reasons, Defendant Universal's
motion, in which Defendant Tellabs joins, for an
order 1) severing Plaintiff's claim against Universal
from the claim against Tellabs, 2) staying the action
against Tellabs, and 3) transferring the action
against Universal to the Northern District of New
York pursuant to 28 U.S.C. 1404(a), is granted.

> FN1 We are not persuaded by Emhart's
> presentation of various airline schedules
> that Chicago is appreciably more
> convenient for Emhart than Binghamton.

> FN2 At the outset, we note that we find
> Emhart's argument that Universal waived
> the right to seek a transfer by filing
> permissive counterclaims wholly without
> merit. 28 U.S.C. 1404(a) sets no time
> limit, and it is sufficient that a defendant
> seeks transfer with reasonable promptness,
> as Universal has here. *See* Wright &
> Miller, Federal Practice and Procedure,
> Section 3844 at 334-36.

> FN3 Several users are located in New
> York state (though not within the Northern
> District), and Emhart does not suggest that
> it will be unable to secure testimony from
> other users.

> FN4 As noted above, we also reject
> Emhart's argument that its employees will
> be significantly more inconvenienced by
> testifying in Binghamton rather than
> Chicago. *See supra* note 1.

N.D.Ill.,1988.
Emhart Industries, Inc. v. Universal Instruments
Corp.

Not Reported in F.Supp., 1988 WL 121538
(N.D.Ill.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**C**
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Thomas J. HADLEY, in his capacity as the Former
Shareholders Representative of the shareholders of
Kiamichi Railroad Company, Inc ., Plaintiff
v.
James S. SHAFFER, individually, Kiamichi
Railroad Company, L.L.C., and Statesrail, L.L.C.,
Defendants/Third-Party Plaintiffs/Counterclaim
Plaintiffs
v.
Jack L. HADLEY and Thomas J. Hadley,
individually. Third-Party Defendants.
**No. Civ.A. 99-144-JJF.**

Aug. 12, 2003.

Jesse E. Finkelstein, Frederick K. Cottrell, III, Anne
Shea Gaza, of Richards, Layton & Finger,
Wilmington, Delaware, for Defendants/Third Party
Plaintiffs/Counterclaim Plaintiffs, Michael E.
Schonberg, and James Berglund, of Thompson &
Knight, P.C., Dallas, Texas, of counsel.
Robert Jacobs, Vincent J.X. Hedrick, of Jacobs &
Crumplar, P.A., Wilmington, Delaware, for Third
Party Defendants, Weldon Stout, of Wright, Stout,
Fite & Wilburn, Muskogee, Oklahoma, of counsel.

OPINION

FARNAN, J.
**\*1** Presently before the Court is Third Party
Defendants' Motion to Dismiss for Lack of
Jurisdiction. (D.I.92). For the reasons discussed
below, the motion to dismiss (D.I.92) will be denied.

I. Introduction

In June, 1995, StatesRail L.L.C. ("StatesRail"), a
Delaware limited liability company, and Kiamichi
Railroad Company ("Kiamichi"), a Delaware

corporation, (collectively referred to as "Third
Party Plaintiffs") entered into an Agreement and
Plan of Merger (the "Merger Agreement"). (D.I.95,
Exh. A). The merger was completed effective June
30, 1995. (D.I. 95, Exh. A at 1). Before the merger,
Kiamichi was a closely-held corporation with
approximately 16 shareholders. (D.I.95, Exh. C).
Jack Hadley and his wife were the majority
shareholders of Kiamichi. (D.I.95, Exh. C). Under
the Merger Agreement, Kiamichi created a
subsidiary under the laws of Delaware, Kiamichi
Acquisition, L.L.C. ("KRR Acquisition"). (D.I. 95,
Exh. A at 1). Pursuant to the terms of the Merger
Agreement, KRR Acquisition acquired Kiamichi's
stock and Kiamichi ceased to exist.

At the time of closing, $1.4 million of the total
purchase price was placed into an escrow account
by the parties for indemnification purposes (the "
Indemnity Escrow Account"). (D.I. 33 at 7, ¶ 4).
Pursuant to the Merger Agreement, funds in the
Indemnity Escrow Account not returned to
StatesRail as indemnity payments are to be
disbursed to the former shareholders of Kiamichi
according to a schedule in the Merger Agreement.
(D.I. 95, Exh. A at §§ 2.3(b), 2.6(e)). A Former
Shareholder Representative ("Representative") was
appointed to administer the indemnity claims
asserted by Third Party Plaintiffs. (D.I. 95, Exh. A
at 25, 48). Initially, Jack Hadley served as the
Representative, but Thomas J. Hadley later assumed
the position. (D.I. 95, Exh. B at ¶ 6).

Following the merger, StatesRail filed a lawsuit in
Texas against Thomas J. Hadley, in his capacity as
Representative, alleging that Hadley had failed to
release indemnity payments to States Rail in
accordance with the terms of the Merger
Agreement. (D.I.95, Exh. E). Thomas J. Hadley
filed a Motion to Dismiss, claiming that the
mandatory forum selection clause in § 11.11 of the
Merger Agreement provided that the Delaware
courts had exclusive jurisdiction. (D.I. 95, Exh. F at
6). As a result of Section 11.11's mandatory forum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 2

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

selection clause, Hadley argued that the Texas court lacked jurisdiction. (D.I. 95, Exh. F at 6). Hadley's Motion to Dismiss was granted on June 29, 1998. (D.I.95, Exh. H).

On July 10, 1998, Thomas J. Hadley, in his capacity as Representative, filed a lawsuit in an Oklahoma state court alleging various breaches of the Merger Agreement. (D.I. 95 at 5). Third Party Plaintiffs removed the suit to federal court and subsequently requested and obtained a change of venue to this Court, based on Section 11.11's forum selection clause. (D.I. 92 at 1-2). Third Party Plaintiffs then filed a Counterclaim and Third Party Complaint against Thomas J. Hadley and Jack Hadley, individually, disputing the ownership of certain life insurance policies related to the Merger Agreement. (D.I. 98 at 2-3).

**\*2** The parties do not dispute that the instant claims are based upon the Merger Agreement. However, Jack Hadley and Thomas J. Hadley, individually, (the "Hadleys") have moved to dismiss the claims against them for lack of in personam jurisdiction. (D.I.92).

## II. Standard of Review

Third Party Defendants Jack Hadley and Thomas J. Hadley contend that the Third Party Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over them in their individual capacities. Rule 4(e) of the Federal Rules of Civil Procedure provides that a federal court may exercise personal jurisdiction over a nonresident "to the extent permissible under the law of the state where the district court sits." *Mesalic v. Fiberloat Corp.,* 897 F.2d 696, 698 (3d Cir.1990); *Mobil Oil Corp. v. Advanced Envtl. Recycling Tech., Inc.,* 833 F.Supp. 437, 440 (D.Del.1993).

Once a defendant has properly raised the jurisdictional defense, the plaintiff has the burden of establishing by a preponderance of the evidence that the defendant has had minimum contacts with the forum state. *Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir.1990), *cert. denied,* 498 U.S. 812 (1990). If

the plaintiff is able to make a prima facie case supporting the exercise of personal jurisdiction, the burden shifts to the defendant to "present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Grand Entm't Group v. Star Media Sales,* 988 F.2d 476, 483 (3d Cir.1993). In the context of a motion to dismiss, the record must be viewed in the light most favorable to the non-moving party. *See Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 192 (D.Del.1996) (holding that the court must accept as true all well-pled facts).

## III. Parties' Contentions

The Hadleys contend that the Court lacks in personam jurisdiction over them for the purposes of this litigation. (D.I.92). The Hadleys rely on three assertions: (i) that they are not bound by the Merger Agreement's forum selection clause; (ii) that they have taken no acts within the state of Delaware that would subject them to statutory jurisdiction; and (iii) that to subject them to jurisdiction would be inconsistent with Due Process.

First, the Hadleys contend that, as non-signatories to the 1995 Merger Agreement, they are not bound by the Merger Agreement's mandatory forum selection clause. (D.I. 98 at 8). Because they are not bound by the forum selection clause, they argue that they have not consented to the exercise of personal jurisdiction over them by the Court. (D.I. 98 at 8-9). Further, the Hadleys contend that the forum selection clause cannot be enforced against them in their individual capacities as third-party beneficiaries. (D.I. 98 at 12-13). The Hadleys contend that third-party beneficiary status can only be conferred upon the party bringing the suit. (D.I. 98 at 13). Because they are not Plaintiffs in the Third Party Complaint, the Hadleys contend that they are not third-party beneficiaries to the Merger Agreement such that they should be deemed to have consented to this Court's jurisdiction.

**\*3** The Hadleys further contend that they have not committed any acts in their individual capacities that would subject them to personal jurisdiction in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

this Court under Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1-6). (D.I. 92 at 6). Finally, the Hadleys contend that because they have not had the requisite minimum contacts with the State of Delaware, the constitutional Due Process requirement has not been met. (D.I. 92 at 7). In support of this assertion, the Hadleys submit affidavits which state that they have not been in the State of Delaware regarding the subject matter of this action. (D.I. 92 at 7). For all these reasons, the Hadleys contend that they are not subject to the jurisdiction of this Court. (D.I.92).

In response, Third Party Plaintiffs contend that the Hadleys have expressly consented to and waived any objections to the exercise of personal jurisdiction by this Court pursuant to the Merger Agreement's forum selection clause. (D.I. 95 at 10). Third Party Plaintiffs argue that, as intended third-party beneficiaries of the Merger Agreement, the Hadleys are bound by the forum selection clause. (D.I. 95 at 12-13). In support of this contention, Third Party Plaintiffs point out that Thomas J. Hadley had previously attempted to enforce the terms of the Merger Agreement in an Oklahoma court, by asserting his standing as the Former Shareholders Representative. (D.I. 95 at 4, 15). Further, Thomas J. Hadley successfully argued to the Texas state court that all causes of action arising out of the Merger Agreement must be brought in Delaware. (D.I. 95 at 16). By having previously used the forum selection clause to his benefit, Third Party Plaintiffs argue that Thomas J. Hadley is now bound by the terms of that clause. (D.I. 95 at 15).

Alternatively, Third Party Plaintiffs contend that this Court has specific jurisdiction over the Hadleys. Plaintiffs assert that under a properly expansive reading of the Delaware long-arm statute, the Hadleys have, in fact, transacted business in Delaware sufficient to satisfy § 3104(c)(1). (D.I. 95 at 17-18).

Further, Third Party Plaintiffs assert that the exercise of jurisdiction by this Court over the Hadleys comports with Due Process. (D.I. 95 at 21). In support of this contention, Third Party Plaintiffs argue that the Hadleys: (i) purposely

availed themselves of Delaware state laws; (ii) could have reasonably anticipated being called into the courts of Delaware; and (iii) would bear a minimal burden if made to defend this action in this jurisdiction. (D.I. 95 at 21). In sum, Plaintiffs contend that the Hadleys are subject to the exercise of personal jurisdiction by this Court. (D.I.95).

IV. Discussion

A. Whether the Hadleys Have Expressly Consented to Jurisdiction in Delaware Pursuant to the Forum Selection Clause?

The first question in an evaluation of whether the Hadleys can be properly subjected to the jurisdiction of this Court, is whether they have consented to jurisdiction as a result of the Merger Agreement's forum selection clause. When a party is bound by a forum selection clause, the party is considered to have expressly consented to personal jurisdiction. *Res. Ventures, Inc. v. Res. Mgmt Int'l, Inc.,* 42 F.Supp.2d 423, 431 (D.Del.1999). An express consent to jurisdiction, in and of itself, satisfies the requirements of Due Process. *Sternberg v. O'Neil,* 550 A.2d 1105, 1116 (Del.1987). Such consent is deemed to be a waiver of any objection on Due Process grounds and an analysis of minimum contacts becomes unnecessary. See *Hornberger Mgmt. Co. v. Haws & Tingle General Contractors, Inc.,* 685 A.2d 724, 727 (Del.Super.Ct.2000) (stating "[a] party may expressly consent to jurisdiction by agreeing to a forum selection clause ... If a party consents to jurisdiction, a minimum contacts analysis is not required."); *USH Ventures v. Global Telesystems. Inc.* C.A. No. 97C-08-086, 1998 Del. Super Lexis 167, at *22 (Del.Super.Ct. May 21, 1998) (same). Thus, if the Court determines that the Hadleys are bound by the forum selection clause, the Court can exercise in personam jurisdiction over them.

*4 In order to determine whether the Hadleys are bound by the forum selection clause, three questions must be resolved. These questions are: (1) whether the forum selection clause is valid; (2) whether the Hadleys are either parties, third-party beneficiaries,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

or closely related to the Merger Agreement; and (3) whether the present claim arises from their standing relating to the Merger Agreement. Only where all three questions are answered in the affirmative, can the Hadleys be bound by the forum selection clause and found to have consented to the Court's jurisdiction.

### 1. Is the Forum Selection Clause Valid?

Both Delaware and federal decisional law acknowledge that, as a general principle, private parties may agree to conduct all potential litigation arising out of a contract in a single jurisdiction. *Process and Storage Vessels, Inc. v. Tank Servs., Inc.,* 541 F.Supp. 725, 733 (D.Del.1982). Such Merger Agreements are presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes: (i) it is a result of fraud or overreaching; (ii) enforcement would violate a strong public policy of the forum; or (iii) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Coastal Steel Corp. v. Tilghman Wheelabrator, LTD.,* 709 F.2d 190, 202 (3d Cir.1983), *overruled on other grounds by, Lauro Lines v. Chasser,* 490 U.S. 495 (1989). Generally put, forum selection clauses are enforced so long as enforcement at the time of litigation would not place any of the parties at a substantial and unfair disadvantage or otherwise deny a litigant his day in court. *See Process,* 541 F.Supp. at 733 (citing *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)). Because the Hadleys have made no assertion regarding the validity of the clause, they have not overcome the presumption in favor of validity. Accordingly, the Court concludes that the forum selection clause is valid.

### 2. Are the Hadleys Subject to the Forum Selection Clause As Third-Party Beneficiaries?

The Court must next determine whether the Hadleys are subject to the terms of the forum selection clause. If the Hadleys are found to be either parties, third-party beneficiaries, or closely related to the

Merger Agreement, they will necessarily be bound by the forum selection clause. The Court will first turn to whether the Hadleys can be considered parties to the Merger Agreement.

The Hadleys correctly assert that they are not parties to the original 1995 Merger Agreement. (D.I. 98 at 8). They are not listed as parties on the Merger Agreement's cover page. Further, neither Thomas nor Jack Hadley signed the Merger Agreement in any capacity. (D.I. 95 at Exh. A). The Hadleys, however, stop short of a full analysis. The parties executed an amendment to the Merger Agreement (the "Amendment") on October 3, 1995. Jack Hadley, in his capacity as Chairman of the Board of Directors of Kiamichi, was a signatory to the Amendment. As such, Jack Hadley would be bound by the forum selection clause in his capacity as chairman. *See Resource Ventures, Inc.,* 42 F.Supp.2d at 432 (finding that a signatory to an amendment of a contract is bound by the forum selection clause in the original contract). However, Jack Hadley is not bound by the clause in his individual capacity. *See, e.g., Packer v. TDI Systems,* 959 F.Supp. 192, 195 n. 2 (S.D.N.Y.1997) (stating "[t]he forum selection clause, of course, applies to the parties to the contracts, the corporate entities, and not to the individual signatories."). Accordingly, the Court concludes that the Hadleys, in their individual capacities, are not parties to the Merger Agreement.

**\*5** The next inquiry is to determine whether the Hadleys can be considered third-party beneficiaries to the Merger Agreement. To qualify as a third-party beneficiary, it must be shown that the contract was "made for the benefit of that third party within the intent and contemplation of the contracting parties." *Grand St. Artists v. Gen'l Electric. Co.,* 19 F.Supp.2d 242, 253 (D.N.J.1998) (citing *Grant v. Coca-Cola Bottling Co.,* 780 F.Supp. 246 (D.N.J.1991)); *Pierce Associates, Inc. v. Nemours Foundation,* 865 F.2d 530, 535 (3d Cir.1988) (applying Delaware law); *Browne v.. Robb,* 583 A.2d 949, 954-955 (Del.1990) (requiring the contracting parties to intend to confer a benefit on the third party). To determine whether the parties intended to make an individual a third-party beneficiary, the Court must look to the terms of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 5

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

contract and the surrounding circumstances. *Grand St. Artists,* 19 F.Supp.2d at 253.

Under Delaware law, the intention of the contracting parties is paramount in determining whether others have standing as third-party beneficiaries. *See E.I. DuPont & Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,* 269 F.3d 187, 197 (3d Cir.2001). Thus, if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract. *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1386 (Del.Super.Ct.1990).

The Court concludes that the Hadleys are intended third-party beneficiaries of the Merger Agreement. As consideration for the sale of shares in Kiamichi, the Merger Agreement provided that the shareholders (including the Hadleys) would receive the payments set forth in paragraph 2.3(a). (D.I. 95, Exh. A at 5). Paragraph 8.6 of the Merger Agreement required the approval of the Hadleys and other shareholders before the Merger Agreement became final. (D.I. 95, Exh. A at 36). The Hadleys also consented to the stock purchase and merger. (D.I. 95 at Exh. D, E, K). The Hadleys, as shareholders, were undoubtedly intended to receive a benefit from the sale of their stock through the Merger Agreement. *See DuPont,* 269 F.3d at 196 . In fact, Jack Hadley and his wife were majority shareholders of Kiamichi, owning approximately 60% of the shares. (D .I. 95 at Exh. C. Schedule 3.4 of Stock Purchase Merger Agreement). Further, Jack Hadley was actively involved in the negotiations that led to the Merger Agreement. *See* Kleifgen Decl. at ¶¶ 3-4.

Thomas J. Hadley has exhibited his status as a third-party beneficiary in at least two ways. First, when faced with the Texas suit, initiated by StatesRail, Mr. Hadley was granted a 12(b)(2) Motion to Dismiss after he successfully argued that "... by Section 11.11 of the Merger Agreement the parties irrevocably submitted and consented to the jurisdiction and venue of the courts of the State of Delaware and the federal courts located in Delaware.

" (D.I. 95, Exh. F at ¶ 6). The case was dismissed based on Mr. Hadley's assertion that the forum selection clause was enforceable in "any dispute arising out of or relating to the Merger Agreement." (D.I. 95, Exh. F at ¶ 6). Two weeks after the Texas court granted Mr. Hadley's Motion to Dismiss, Mr. Hadley instituted suit against Third Party Plaintiffs in Oklahoma. There, Mr. Hadley used his third-party beneficiary status to his benefit by seeking compensation for alleged breaches of the Merger Agreement. The Oklahoma court agreed with the Texas court's conclusion that the forum selection clause was binding and transferred the case to this Court.

**\*6** Delaware law prohibits third-party beneficiaries from reaping the benefits of a contract they seek to enforce, while, at the same time, avoiding the burdens or limitations of the contract, such as a forum selection clause. *Process,* 541 F.Supp. at 733 . For example, in *Rumsey Elec. Co. v. Univ. of Del.,* the Delaware Supreme Court held that:
When plaintiff seeks to secure benefits under a contract as to which he is a third-party beneficiary, he must take that contract as he finds it .... the third party cannot select the parts favorable to him and reject those unfavorable to him.

358 A.2d 712, 714 (Del.1976) (quoting *Sanders v. Amer. Cas. Co.,* 269 Cal.App.2d 306, 310 (Cal.Ct.App.1969)). *See also, Coastal Steel,* 709 F.2d at 203 (holding that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable); *Barrett v. Picker Int'l Inc.,* 589 N.E.2d 1372, 1376 (Ohio Ct.App.1990) ("Therefore, plaintiffs' status as third-party beneficiaries cannot be used as both a sword to reap the benefits of the [contract] and a shield to protect them from enforcement of the forum selection clause."). Thomas J. Hadley cannot use the forum selection clause to his advantage, as he did in the Texas and Oklahoma litigations, and then assert that he is not bound by its terms in this Court. Based on the above cited factors, the Court concludes that the Hadleys are third-party beneficiaries to the Merger Agreement. As third-party beneficiaries, the Hadleys are bound by the terms of the Merger Agreement, including the forum selection clause.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

Even if the Hadleys are not third-party beneficiaries to the Merger Agreement, the Court concludes that they are closely related to the Merger Agreement, and therefore, reasonably bound by its forum selection clause. "Forum selection clauses bind nonsignatories that are closely related to the contractual relation or that should have foreseen governance by the clause." *Jordan v. SEI Corp.,* 1996 U.S. Dist. LEXIS 7627, at *18-19 (E.D. Pa. June 4, 1996). *See also Hugel v. Corporation of Lloyd's,* 999 F.2d 206, 209-210 (7th Cir.1993) (binding corporations owned and controlled by contracting party); *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988) (binding parent companies of contracting party and individual directors); *Coastal Steel,* 709 F.2d at 202 (binding a third-party beneficiary). In the instant case, the Hadleys are closely related to the Merger Agreement for the reasons discussed in the context of the Court's third-party beneficiary analysis. Accordingly, the Court concludes that the Hadleys should have foreseen governance by the forum selection clause.

### 3. Do the Claims Against the Hadleys Arise from their Status Relating to the Merger Agreement?

In order for the Hadleys to be bound by the terms of the forum selection clause, the claims asserted must arise from the Merger Agreement at issue. *See DuPont,* 269 F.3d at 197; *see also Indus. Elec. Corp. v. Power Distrib. Group, Inc.,* 215 F.2d 677, 680 (7th Cir.2000) (holding that a third-party beneficiary was not compelled to arbitrate claims because the claims did not arise out of the contract from which it derived its third-party status). Here, the Hadleys concede that the present claim arises out of the Merger Agreement. Because the claim is based on the Merger Agreement to which the Hadleys are bound, the Court concludes that the Hadleys are bound by the terms of the forum selection clause contained within the Merger Agreement.

\*7 In sum, the Court concludes that Jack Hadley and Thomas J. Hadley are third-party beneficiaries, or at the very least, closely related to the Merger Agreement, which contains a valid forum selection

clause such that the Hadleys are bound by the forum selection clause. Because the Hadleys are bound by the forum selection clause, the Court concludes that they have expressly consented to the jurisdiction of this Court.

### B. Whether the Hadleys are Subject to Personal Jurisdiction Under Specific Jurisdiction Principles?

In the alternative, even if the Hadleys were not bound by the forum selection clause such that they cannot be said to have consented to jurisdiction in this Court, the Court would conclude that the Hadleys are subject to the Court's jurisdiction under the principles of specific jurisdiction. In the absence of consent to jurisdiction, the determination of whether personal jurisdiction exists is a two-step process under Delaware law. *Jeffreys v. Exten,* 784 F.Supp. 146, 150 (D.Del.1992). First, in personam jurisdiction must exist under the applicable state long-arm statute. *See* 10 *Del. C.* § 3104 (2003). Second, the exercise of jurisdiction must comport with the Due Process Clause of the Federal Constitution under the standards announced in *International Shoe Company v. Washington,* 326 U.S. 310 (1945). *See Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984) ; *Hercules, Inc. v. Leu Trust and Banking (Bahamas) Ltd.,* 611 A.2d 476 (Del.1992), *cert. dismissed,* 507 U.S. 1025 (1993).

In order to determine whether in personam jurisdiction over the Hadleys exists, the Court must determine whether "the alleged conduct of a defendant comes within one of the provisions of the long-arm statute." *Blue Ball Props., Inc. v. McClain,* 658 F.Supp. 1310, 1315 (D.Del.1987). Third Party Plaintiffs assert that jurisdiction exists under 10 *Del. C.* § 3104(c)(1). This subsection of Delaware's long-arm statue provides that a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent "transacts any business or performs any character of work or service in the State." 10 *Del.C.* § 3104(c)(1). When applying the statute, it must be construed liberally, to "confer jurisdiction to the maximum extent possible under the Due Process Clause." *Wesley-Jessen Corp. v. Pilkington*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

*Visioncare, Inc.,* 863 F.Supp. 186, 188 (D.Del.1993) ; *accord LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986).

Subsection (c)(1) has been interpreted to be a specific jurisdiction provision. *Intel Corp. v. Broadcom Corp.,* 167 F.Supp.2d 692, 700 (D.Del.2001). Specific jurisdiction requires that there be a nexus between the plaintiff's cause of action and the conduct of the defendant. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1983). Therefore, personal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction. *Blue Ball,* 658 F.Supp. at 1316; *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1466 (D.Del.1991); *Tristrata Tech., Inc. v. Neoteric Cosmetics, Inc.,* 961 F.Supp. 686, 690 (D.Del.1997) . The relatedness requirement only provides that the plaintiff cannot assert personal jurisdiction over a defendant on claims that are unrelated to the defendant's jurisdictional contacts. *Intel,* 167 F.Supp.2d at 704; *Int'l Shoe,* 326 U.S. at 317-18. The analysis then rests on two questions: (i) whether the Hadleys "transacted business" in Delaware to satisfy subsection (c)(1); and (ii) if so, whether those contacts in Delaware gave rise to the present controversy.

### 1. Whether the Hadleys Transacted Business in Delaware?

*8 Because Third Party Plaintiffs assert jurisdiction over the Hadleys in their individual capacities based on actions taken in their capacities as corporate agents, the fiduciary shield doctrine is implicated. The fiduciary shield doctrine is a judicially created doctrine that immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over that individual. *Res. Ventures,* 42 F.Supp.2d at 434. In the past, this Court has concluded that the fiduciary shield doctrine is not an absolute bar to personal jurisdiction over a corporate agent. *Mobil Oil,* 833 F.Supp. at 443. As such, the mere fact that the defendant has acted through his corporation is

insufficient to bar jurisdiction over the defendants individually. *Tristrata,* 961 F.Supp. at 690. Thus, the Court must read § 3104(c)(1) broadly and consider all forum related contacts of the individual defendants, even those taken in their fiduciary capacities. *Res. Ventures,* 42 F.Supp.2d at 434; *Brady v. Preferred Florist Network, Inc.,* 791 A.2d 8, 12 (Del. Ch.2001).

In support of their argument that the Hadleys are subject to this Court's jurisdiction, Third Party Plaintiffs point to the Delaware Chancery Court's decision in *NRG Barriers, Inc. v. Jelin,* C.A. No. 15013, 1996 Del. Ch. LEXIS 81 (Del. Ch. July 1, 1996). This Court finds *NRG* to be on point factually and is persuaded by the *NRG* Court's analysis. In *NRG,* the Chancery Court denied defendant-shareholder's Motion to Dismiss for lack of in personam jurisdiction. 1996 Del. Ch. LEXIS 81, at *6. The court found that the actions of defendant-shareholders constituted the "transact[ion] of business" sufficient to subject them to jurisdiction under Subsection (c)(1) of Delaware's long-arm statute. *Id.* The court pointed to the following four facts as support for its finding: (i) defendants were shareholders in a closely-held Delaware corporation; (ii) defendants entered into a Stock Purchase Merger Agreement, a contract with a Delaware corporation to sell their stock in the Delaware close corporation; (iii) the parties expressly agreed Delaware law governed the Stock Purchase Merger Agreement; and (iv) Delaware lawyers participated in drafting the Merger Agreement and rendered legal advice with respect to Delaware law. *Id.* at *7.

The Court finds that three of the four factors cited in *NRG* are present in this case. As to the first factor, the Hadleys were shareholders in Kiamichi, a closely-held Delaware corporation. Second, the Hadleys, as shareholders, entered into the Merger Agreement, which provided for a stock purchase and merger. Third, as the Court has previously discussed, the parties consented to the Merger Agreement, which contained a Governing Law Clause and provided that the Merger Agreement would be enforced in accordance with the laws of Delaware. (D.I. 95, Exh. A. at § 11.5).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

*9 In support of their contention that the statutory requirements of Delaware's long-arm statute have not been met, the Hadleys have provided the Court with affidavits that assert that they have not been in Delaware regarding the subject matter of this action. (D.I. 92 at 7). However, the Hadleys fall short in their effort to avoid jurisdiction by relying too heavily on physical ties to Delaware. As noted in *NRG,* the court is not limited to a "personal, physical presence ... within the borders of a state" when determining whether personal jurisdiction exists. 1996 Del. Ch. LEXIS 81, at *10.

The Court concludes that the Chancery Court's holding in *NRG* should be followed, and therefore, concludes that the Hadleys' actions satisfy the minimum contacts required by Subsection (c)(1) of the Delaware long-arm statute. Having concluded that the Hadleys transacted business in Delaware sufficient to satisfy the Delaware long-arm statute, the Court must next determine whether the Hadleys' contacts with Delaware are related to the present controversy. Because neither party disputes that the Merger Agreement and resulting stock purchase and merger gave rise to the present controversy, the Court concludes that the statutory requirement of specific jurisdiction has been met.

### 2. Due Process Requirements

Having determined that the Hadleys have satisfied the statutory basis for establishing personal jurisdiction, the Court must next consider whether the exercise of personal jurisdiction comports with the constitutional requirements. Due process requires that a defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe,* 326 U.S. at 319. In *Hanson v. Denckla,* the Supreme Court noted that "it is essential that in each case there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253 (1958).

In addition, the defendant's conduct and connection with the forum State must be such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). A Due Process analysis requires the court to examine the relationship between the forum, the litigation, and the defendant to determine whether a defendant can be fairly subjected to the court's personal jurisdiction. *Sternberg v. O'Neil,* 550 A.2d 1105, 1120 (Del.1988).

After reviewing the facts in light of the applicable principles, the Court concludes that the exercise of personal jurisdiction in this case comports with due process. The Hadleys purposely availed themselves of Delaware law. As shareholders, they approved the Merger Agreement, which explicitly stated that Delaware law would govern all disputes arising from the Merger Agreement after the merger. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Further, Jack Hadley was instrumental in the negotiations that led to the Merger Agreement. Both Jack and Thomas J. Hadley voted their shares in favor of the Merger Agreement. By approving the Merger Agreement, the Hadleys could have reasonably anticipated being haled into the Delaware courts. *See World-Wide Volkswagen,* 555 U.S. at 291-292.

*10 Finally, the burden on the Hadleys to litigate the present claim in Delaware is minimal when weighed against the interests of Third Party Plaintiffs and the State of Delaware. Because this claim arises out of Thomas J. Hadley's breach of contract claims, which are also being litigated in Delaware, he cannot contend that he would be unduly burdened by being made to litigate the instant claims in Delaware, as well. Further, the State of Delaware has a strong interest in adjudicating related claims in the same court. Finally, the Hadleys have failed to present the Court with any factual support for why jurisdiction would violate Due Process or be unduly burdensome. Accordingly, the Court concludes that the Due Process requirements are satisfied.

### V. Conclusion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

In sum, the Court concludes that the forum selection clause contained within the Merger Agreement is valid and enforceable against the Hadleys in their individual capacities. Additionally, the Court concludes that the exercise of personal jurisdiction over the Hadleys is proper under the Delaware long-arm statute and comports with Due Process. Accordingly, the Third Party Defendants' Motion to Dismiss (D.I.92) will be denied.

An appropriate Order will be entered.

### ORDER

NOW THEREFORE, for the reasons stated set forth in the Opinion issued this date, IT IS HEREBY ORDERED this *12th* day of August 2003, that the Third Party Defendants' Motion to Dismiss for Lack of Jurisdiction (D.I.92) is *DENIED.*

D.Del.,2003.
Hadley v. Shaffer
Not Reported in F.Supp.2d, 2003 WL 21960406 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                              Page 1

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,E.D. Pennsylvania.
    HAY ACQUISITION COMPANY, I, INC. et al.,
                         Plaintiffs,
                              v.
        Bernd SCHNEIDER et al., Defendants.
               **No. Civ.A. 2:04-CV-1236.**

                       April 27, 2005.

Glenn A. Beard, Philadelphia, PA, for Plaintiffs.
John J. Barrett, Jr., Saul Ewing LLP, and Michael J.
Salmanson,     Salmanson     Goldshaw,     P.C.,
Philadelphia, PA, for Defendants.

                      MEMORANDUM

DAVIS, J.
*1 Presently before the Court is the Motion to
Dismiss or to Stay filed by Defendants Bernd
Schneider and Lucie Boller-Bockius (Defs.' Mot.,
Doc. No. 19). For the reasons that follow,
Defendant Schneider's Motion to Dismiss is
GRANTED with respect to all Plaintiffs. The Court
will decline to exercise its jurisdiction over their
claims against Schneider, as they are bound to bring
those claims in Germany under the forum selection
clause in Schneider's employment contract. These
dismissals shall be effected without prejudice, in the
event that the German Courts cannot or will not
adjudicate their claims.

Defendant Boller-Bockius' Motion to Stay is
GRANTED with respect to all Plaintiffs. Moreover,
the Court will stay the instant action in its totality
until the German Courts conclude the parallel,
pending litigation involving both Defendants
Schneider and Boller-Bockius.

               I. FACTUAL AND PROCEDURAL

                      BACKGROUND

                      *A. The Parties*

Plaintiffs in this matter are Hay Acquisition
Company I, Inc. ("Hay Acquisition"), Hay Group
Management, Inc. ("Hay Management"), Hay
Group, Inc. ("Hay Group"), and Hay Group
International, Inc. ("Hay International")
(collectively, "Plaintiffs" or "Hay U.S. Companies"
). Hay Acquisition is the owner of Hay
Management, Hay International, and Hay Group. *Id.*
at 26. Hay Acquisition and Hay Group GmbH ("
Hay Germany") are owned by an entity known as
Hay Group Investment Holding B.V. ("HGIH B.V."
). Pls.' Compl. at ¶ 27. An entity that will be
referred to as "HG Bermuda" sits atop the
foregoing organizational structure, as the ultimate
parent company of all the above named entities. *Id.*
at ¶ 28. HG Bermuda is governed by an
Ownership Board consisting of approximately
fifteen shareholders; according to Plaintiffs'
Complaint, this Board acts as the "ultimate
governing body for all the Hay companies." *Id.* at ¶
33. The organizational head of HG Bermuda is
Chris Matthews, who is the Chairman and Chief
Executive Officer of that entity, as well as the
Chairman of the Boards of HGIH B.V. and all the
Plaintiff entities. *Id.* at ¶ 31. Relevant to this
Motion is the fact that Hay Management is the
center of accounting for all of the subsidiaries of
HG Bermuda, including all the Plaintiffs and Hay
Germany. *Id.* at ¶ 30.

The individual defendants in this case are all former
employees of the various Hay entities. Defendant
Bernd Schneider is the former Chief Executive
Officer of HGIH B.V., the former President of all
the Plaintiff entities, a former officer of Hay
Germany, and a former director of Hay Acquisition.
*Id.* at ¶ 15. Defendant Lucie Boller-Bockius is the
former Finance Director and an officer of Hay
Germany. Pls.' Compl. at ¶ 18. Defendant Suresh

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 2

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

Bhula is a former director and treasurer of Hay Group, Hay Acquisition, and Hay International. *Id.* at ¶ 7. He has not joined in the instant motion to dismiss.

### B. Schneider's Employment Contract and the Cost Allocation Agreement

**\*2** In October 2001, Schneider entered into an employment agreement with HGIH B.V. (" Employment Agreement" or "Agreement"), pursuant to which he became Chief Executive Officer of that entity. *Id.* at ¶ 32. In February 2003, he was appointed director of Hay Acquisition; in March of 2003, he was appointed president of each of the Plaintiff entities. *Id.* Prior to Schneider's appointment to the presidency of the Plaintiff entities, that position was filled by Chris Matthews. *Id.* at ¶ 31.

The Employment Agreement is dated October 1, 2001; signed by Schneider, Matthews, and William Heppleston, who is identified as a "managing director;" and reviewed and approved by two employees of HGIH B.V. FN1 9/2/04 Thees Decl., Ex. B. The Agreement appears to be the sole document governing the terms and conditions of Schneider's employment with HGIH B.V. or any other Hay affiliate. In connection with their opposition to this Motion, Plaintiffs have submitted the sworn declaration of the General Counsel of Hay Group, Jeffrey H. Marcus, who states that Schneider received no additional compensation after his appointment to the presidency of the Hay U.S. Companies. Marcus Decl. at ¶ 16. Marcus also states that Schneider's employment contract was not amended in any way after he was appointed to be President of the Hay U.S. Companies. *Id.*

> FN1. As an evidentiary matter, the Court notes that the Employment Agreement is relevant to Defendant Schneider's motion to dismiss under Rule 12(b)(6), which is based on the existence of a valid forum selection clause. While a Court may ordinarily not consider matters outside of the pleading attacked by a Rule 12(b)(6)

motion, the Third Circuit has recognized that a Court may rely on documents that the defendant attaches to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claim. *See Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002). Because the Plaintiffs' complaint refers to the employment agreement and it is central to the claims asserted, as will be discussed, the Court may properly consider the employment contract in determining whether dismissal is warranted under Rule 12(b)(6) due to the forum selection clause contained therein. Defendants ground the remainder of their dismissal motion in the doctrines of international comity and *forum non conveniens* rather than Rule 12(b)(6). The Court may therefore properly rely on the other supporting documents attached to the parties' motions, replies, and sur-replies in evaluating the merits of those arguments.

The Employment Agreement contains several provisions relevant to this Motion to Dismiss. Article VI of the Agreement contains both a choice of law provision and a forum selection clause:
This agreement contains the entire agreement between the parties and shall be governed by and construed in accordance with the internal substantive laws of Germany. [HGIH B.V. and its assignees] and [Schneider] each consent to the exclusive jurisdiction of, and agree that any controversy between them arising out of this Agreement shall be brought only in the Labor Court of Germany or such other court venued in Frankfurt, Germany as may have subject matter jurisdiction over the controversy.... FN2

> FN2. The forum selection clause does make an exception for violations of Schneider's covenant not to compete. Such claims may be brought by HGIH B.V. and its assignees wherever such violation(s) shall occur. 9/2/04 Thees Decl., Ex. B at ¶ 6.3.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

9/2/04 Thees Decl., Ex. B. at 10, ¶ 6.3. Article II of the Employment Agreement sets forth the manner in which Schneider's base salary and bonus shall be determined and paid. Certain subsections of Articles III and IX speak to the definition of "for cause" termination and the consequences thereof. *Id.* at 4-6, ¶¶ 3.1, 3.5; 12-13, ¶ 9.4

The Employment Agreement refers to the Hay U.S. Companies in a number of ways, though not by their individual names. Article 9.1 of the Employment Agreement defines the "Affiliated Group" as HGIH B.V. and its subsidiaries, a category to which the Hay U.S. Companies indisputably belong. *Id.* at 12, ¶ 9.1. Article 1.2 of the contract states that Schneider shall serve as "a member of the Board of Directors or other governing body of each member of the Affiliated Group." *Id.* at 2, ¶ 1.2. Article 2.3 of the contract provides that Schneider may participate in certain benefit plans of the Affiliated Group, so long as his participation does not present an unreasonable difficulty; Article 2.6 allows Schneider to be reimbursed for expenses incurred in connection with his services to the Affiliated Group. *Id.* at 3, ¶¶ 2.3, 2.6. Article 2.7(a) gives HGIH B.V. the right to force members of the Affiliated Group to comply with Schneider's requests for payment under the contract. *Id.* at 4, ¶ 2.7(a). The entirety of Article V imposes a covenant not to compete upon Schneider in the event of his departure from HGIH B.V.; that covenant expressly includes a prohibition on engaging in activities that would be directly competitive with members of the Affiliated Group, misappropriating intellectual property and disclosing confidential information of the Affiliated Group. *Id.* at 7-9, ¶¶ 4.1-4.3. Lastly, the Agreement states that a termination for "just and reasonable cause" may result from behaviors that are materially harmful to any member of the Affiliated Group: (1) "an intentional act of fraud, embezzlement or theft in connection with his duties or in the course of employment with . .. any [ ] member of the Affiliated Group"; (2) "intentional wrongful damage to property of ... any [ ] member of the Affiliated Group"; (3) "intentional wrongful disclosure of secret processes or confidential information of ... any [ ] member of the Affiliated Group"; (4) "intentional wrongful engagement in competitive activity in violation of

this Agreement." *Id.* at 13, ¶ 9.4(a)-(d).

**\*3** On October 24, 2003, Hay Germany, HGIH B.V., and Hay Management executed a Cost Allocation Agreement, to memorialize how Hay Management would reimburse HGIH B.V. for services provided to that entity by Schneider. [FN3] 9/2/04 Thees Decl., Ex. C (Cost Allocation Agreement dated October 24, 2003). In this agreement, Hay Management agrees to assume "all other contractual obligations as triggered by the Employment Contract," meaning the original Employment Agreement between Schneider and HGIH B.V. *Id.* The agreement states that it is retroactive to October 1, 2001, the date of Schneider's original Employment Agreement, and goes on to proclaim that "This contract is governed by German law. Venue is Frankfurt am Main." *Id.*

> FN3. The Cost Allocation Agreement is dated October 24, 2003. It was not signed by Chris Matthews, on behalf of HGIH B.V. and Hay Management, until November 1, 2003. Because the agreement is retroactive to October 1, 2001, the date on which the parties actually placed their signature on the document is irrelevant to the Court's analysis.

### C. Alleged Misdeeds by Schneider and Boller-Bockius

A material amount of the allegations in the Complaint against Schneider and Boller-Bockius stem from a dispute between Schneider, the Ownership Board, and a subset of the Ownership Board known as the Compensation Committee. Plaintiffs allege that the conflict began in late 2002, when the Compensation Committee, which was advised by Plaintiffs' Chief Financial Officer Stephen D. Kaye, recommended a bonus of less than 100% of Schneider's eligible bonus under his Employment Agreement and required that the bonus he did receive be reinvested in HG Bermuda. Pls.' Compl. at ¶¶ 35, 38. Plaintiffs allege that, in response to these and other actions Schneider perceived as unjust, he began to engage in a variety of improper activities with the goal of retaliating

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

against Hay personnel who supported the decisions of the Ownership Board and the Compensation Committee, including Mr. Kaye. Plaintiffs allege that one such improper action was Schneider's commencement and maintenance of a malicious and unfounded internal investigation against Mr. Kaye. In the course of pursuing this investigation and other retaliatory activities, Plaintiffs claim that Schneider recruited other Hay employees, specifically Bhula and Boller-Bockius, whom he rewarded for their participation. *Id.* at ¶¶ 73-95.

Plaintiffs also allege that Schneider, in order to rectify what he perceived to be an underpayment of his fiscal year 2002 bonus, paid himself a secret bonus of $230,000 USD in Hay Germany funds. These funds were then primarily recharged to Hay Management. *Id.* at ¶ 50. This payment was allegedly made in concert with Boller-Bockius and without the knowledge or consent of the Compensation Committee. [FN4] *Id.* Plaintiffs further allege that Schneider engaged a fleet of attorneys in four different countries to prepare resolutions and documents that would impede the independent operation of the Ownership Board; as with the secret bonus payment, Schneider allegedly used Hay Germany funds to pay these attorneys, then charged those funds to Hay Management. *Id.* at ¶¶ 52-54. Plaintiffs allege that both the excess bonus payment and the attorneys' fees charged to Hay Management caused a financial loss to that entity, as well as to the other Plaintiffs, who share the allocated costs of central management. *Id.* at ¶¶ 66, 67.

> FN4. The Complaint, however, indicates that Schneider has returned this overpayment and executed a statement of waiver. *Id.* at ¶ 68.

*4 Plaintiffs also allege that Schneider, in order to reward Boller-Bockius for her complicity in the above-detailed activities, promoted her to the position of "Finance Director" of Hay Germany, a position for which she was not qualified and in which she had control over the financial affairs of that entity. *Id.* at ¶ 128. Schneider then purportedly raised Boller-Bockius's salary, provided her with

secret pension and severance agreements, and improperly transferred to her a portion of his interest in HG Bermuda. Again, Plaintiffs claims that none of these actions were known to or approved by the Plaintiffs or Hay Germany. *Id.* at ¶ ¶ 130, 136. As a result, the Hay Germany fiscal 2003 audit did not reflect the cost of the secret termination agreement allegedly entered into by Schneider and Boller-Bockius; this erroneous audit was incorporated into the consolidated financial results of HIGH B.V. *Id.* at ¶¶ 142-144. The overstated consolidated results resulted in the appearance of a much larger pool of income from which to determine executive bonuses, including Schneider's; Plaintiffs allege that the resulting overpayment of bonuses caused the Hay companies to suffer a financial loss. *Id.* at ¶¶ 152-153.

### *D. The German Court Actions*

On December 9, 2003, the Ownership Board terminated Schneider for cause from all his positions in the Hay companies, including his position as president of the Plaintiff company and director of Hay Acquisition. *Id.* at ¶ 154. Schneider filed suit in the Labor Court in Frankfurt, Germany on December 23, 2003, contesting that he was terminated for cause and seeking a declaration that he was improperly terminated. Defs.' Mot. at 4. In his original complaint in the German court, Schneider states his belief that the basis for HGIH B.V.'s termination was his execution and amendment of the pension agreement for Boller-Bockius without the required prior approval of the attendees of HGIH B.V.'s annual meeting and his failure to immediately inform the Hay Group and its auditors of this agreement, leading to "a negative financial effect worldwide." 9/2/04 Thees Decl., Ex. E at. ¶ 9.

Schneider has amended his complaint in the German Court to ultimately include all the Plaintiffs in this action. With respect to the Plaintiffs in this action, on April 16, 2004, Schneider amended his complaint to include a demand for a declaratory judgment that he was terminated without cause and that he is entitled to a claim for damages, that he is entitled to bonus payments, that he is not liable to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 5

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
(Cite as: Slip Copy)

Plaintiffs for damages, that Plaintiffs are liable for his legal fees, and that any judgment rendered in the matter before this Court would not be enforceable in Germany. 9/2/04 Thees Decl. at ¶ 21e.

Boller-Bockius is also pursuing litigation against various Hay entities in German court. According to her German counsel, Dr. Holger Thomas, after Hay Germany refused Boller-Bockius' request for severance payments, she filed suit against that entity on February 18, 2004. 9/1/04 Thomas Decl. at ¶ 6. In that action, Boller-Bockius seeks payments due her under her original employment agreement with Hay Germany dated October 1, 1972, her supplemental agreement dated January 16, 2003, and her severance payment agreement dated July 15, 2003. *Id.* at ¶ 7; see also *id.*, Ex. B at 2-3. In its responsive pleading to Boller-Bockius' complaint, Hay Germany asserts that the January 2003 and July 2003 agreements are not valid because of various wrongdoings engaged in by Boller-Bockius; these wrongdoings are exclusively related to actions taken in concert or at the behest of Schneider. Hay Germany further states that Schneider unilaterally and inappropriately entered into these agreements with Boller-Bockius without notice to or the required approval of his or her employer or its shareholders. *Id.*, Ex. B at 20-22. Hay Germany's pleading also details the concealment of these agreements by Schneider and Boller-Bockius from the auditors that performed the 2002/2003 audits on all the Hay subsidiaries and that concealment's impact on the financial results of those entities; her collaborations with Schneider in his allegedly retaliatory activities against Mr. Kaye; and her assistance in securing Schneider's excessive bonus in the year 2002. *Id.* at 5, 17, 23. In addition to pursuing her own action, Boller-Bockius joined Schneider's action in the Labor Court on April 16, 2004, in the same filing that Schneider joined the Hay U.S. Companies to that action. 9/2/04 Thees Decl. at ¶ 21(e).

*5 On October 13, 2004, the German Labor Court held an oral hearing in chambers, pursuant to which it took several actions. 11/30/03 Thees Decl. at ¶ 3. In an order dated November 17, 2004, the Labor Court ultimately separated the complaints of Boller-Bockius and Schneider, retaining jurisdiction

over the claims asserted in the former and declining jurisdiction over those asserted in the latter. [FN5] *Id.* at ¶¶ 5, 9. Counsel for the Hay U.S. Companies attending this hearing, as well as a subsequent conference on November 17, 2004. *Id.* at ¶¶ 3, 5. The Court referred the remainder of Schneider's claims, including his amended claims over the Hay U.S. Companies, to the District Court of Frankfurt. *Id.* at ¶ 5. According to the latest declaration from Schneider's counsel in the German action, Dr. Thomas Thees, Schneider has paid the required filing fees to commence the action in the District Court and all files from the Labor Court have been copied and transferred to that institution so that it can begin to consider the merits of those claims. 3/4/05 Thees Decl. at ¶ 2. Oral argument on the merits of Boller-Bockius' claims in the Frankfurt Labor Court has been scheduled for May 11, 2005. *Id.* at ¶ 7.

> FN5. The German Labor Court did retain jurisdiction over one of Schneider's claims related to a consulting agreement between Schneider and Hay Germany. It has stayed any resolution of that claim until the District Court in Frankfurt renders its decision on Schneider's transferred claims.

### E. Defendants' Motion to Dismiss Or, in the Alternative, to Stay the Instant Case

Defendants have moved to dismiss the instant action on a number of grounds. First, Defendant Schneider alleges that the forum selection clause contained in his Employment Agreement is binding on all Plaintiffs, requiring them to litigate their claims in Frankfurt, Germany. Second, both Defendant Schneider and Defendant Boller-Bockius move the Court to dismiss or stay this action in favor of the pending, parallel litigation in Germany under the doctrine of international comity. Third, both Defendant Schneider and Defendant Boller-Bockius move the Court to dismiss this case on the grounds of *forum non conveniens*. The Court will address the forum selection clause and international comity grounds in turn. As the Court finds that an analysis under those two grounds resolves the instant dismissal motion, it will not consider the parties'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

*forum non conveniens* arguments.

## II. FORUM SELECTION CLAUSE

Defendant Schneider claims that a valid and enforceable forum selection clause requires Plaintiffs to pursue their claims against him in the German court system. Defs.' Mot. at 2. Plaintiffs argue that the forum selection clause is irrelevant to this case, because (1) the claims in this case do not involve any breach of the employment contract and (2) the original signatory to the employment contract, HGIH B.V., is not a party to this action, and no other party, including the Hay U.S. Companies, is bound by the forum selection clause. Pls.' Opp'n at 8.

The Supreme Court has held that a valid international forum selection clause should be enforced unless "enforcement is shown by the parties to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In adopting the holding of *The Bremen,* the Third Circuit stated that
*6 a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 202 (3d Cir.) *cert denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). Plaintiffs do not assert that the forum selection clause is the result of fraud or overreaching nor that enforcement would violate public policy. Plaintiffs' arguments are grounded in the last factor of *The Bremen*-that application of the forum selection clause in the particular circumstances of this case would be unreasonable.

### A. Nature of Plaintiffs' Claims

Plaintiffs' first claim of unreasonableness stems from the nature of the claims asserted in their complaint and the scope of the forum selection clause. Plaintiffs argue that their claims do not sound in contract, and specifically do not sound in the employment contract between Schneider and HGIH B.V., and so are not governed by the forum selection clause.

A district court sitting in diversity determines the effect of a forum selection clause under federal, not state, law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995). Third Circuit case law is clear that "broad, unconditional forum selection clauses which mandate jurisdiction in a specific forum ... apply to all claims, whether they be based in tort or contract, and shall be enforced." *Oak Systems v. Fracotyp-Postalia, Inc. et al.,* 2002 U.S. Dist. LEXIS 2213, *7 (3d Cir.2002). Moreover, " where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain." *Coastal Steel,* 709 F.2d at 202. In *Coastal Steel,* the forum selection clause required any dispute arising out of the conditions of the contract to be heard by the courts of England; the Third Circuit squarely rejected the contention that the forum selection clause was inapplicable to tort claims. *Id.* at 203. The Court stated that "[i]f forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as ... misrepresentation." *Id.*

Plaintiffs assert four separate claims against Defendant Schneider; none of these claims are explicitly contractual. First, Plaintiffs seek a declaratory judgment that Schneider was terminated for cause, as the bylaws of HG Bermuda forbid the payment of a post-termination distribution to such a former employee. Pl.'s Compl. at ¶¶ 161, 162. Second, Plaintiffs seek a declaratory judgment that Schneider is no longer due the excessive and subsequently returned 2002 bonus payment that was ultimately paid from the Hay Management coffers. *Id.* at ¶ 170. Third, Plaintiffs claim that Schneider breached his fiduciary and legal duties as president of Plaintiffs and director of Hay Acquisition by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

taking an excessive bonus, retaining outside counsel to harass and investigate certain employees and officers of Plaintiffs, awarding Boller-Bockius undeserved promotions, salary, and benefits, and engaging in other improper actions. *Id.* at ¶¶ 171-181. Fourth, Plaintiffs assert that Schneider's concealment of the benefits awarded to Boller-Bockius amount to negligent and intentional misrepresentation. *Id.* at ¶ 185-191.

*7 Plaintiffs' claims in this case clearly stem from the existence of the contractual relationship between Schneider and HGIH B.V. To begin, Plaintiffs' complaint alleges that Schneider was terminated from all the positions he held with the various Hay companies by the Ownership Board of HG Bermuda, which is the entity specified in Schneider's Employment Agreement with the power to take such action. Plaintiffs request that this Court determine that the entity that actually fired Schneider did so for cause and that Schneider is not due his 2002 bonus; both of these questions are governed by the terms of the Employment Agreement signed by HGIH B.V., which delineates the acts that the Ownership Board may use to justify a termination for cause. [FN6] Moreover, Plaintiffs' other demands-that this Court find that Schneider breached his fiduciary duties to the Hay U.S. Companies, and that he negligently misrepresented facts related to Boller-Bockius' severance agreement-are all claims grounded in actions Schneider was able to take due to his position as an officer and director of the Hay U.S. Companies-positions that Plaintiffs claim Schneider only obtained due to his preexisting status as CEO of HGIH B.V.

> FN6. Notably, the "for cause" provisions explicitly include actions that have a " materially harmful" effect on the Plaintiffs in this case.

It is clear that the Third Circuit's holding in *Coastal Steel* requires this Court to find that the forum selection clause at issue would encompass Plaintiffs' claims. The forum selection clause in this case is phrased slightly differently than that in *Coastal Steel,* but its purpose is identical-to guarantee that

all disputes growing out of the contractual relationship between Schneider and HGIH B.V. be heard in a specified jurisdiction. As the disputes in this case grow out of the terms, conditions, and duties created and imposed by Schneider's Employment Contract, the Court finds that they falls within the scope of the forum selection cause.

### B. Plaintiffs' Alleged Non-Party Status

The above discussion, though, presupposes that the Plaintiffs in this action are bound by the employment contract, a proposition that Plaintiffs dispute. With respect to this particular issue, the Plaintiffs in the matter find themselves in two separate factual positions: Hay Management is a party to the Cost Allocation Agreement, which makes reference to the initial Employment Agreement; Hay Acquisition, Hay Group, and Hay International are not.

### 1. Plaintiff Hay Management

The Court finds that, by virtue of its status as a party to the Cost Allocation Agreement, Plaintiff Hay Management is bound by the choice of law and forum selection clauses contained in the original employment agreement. Hay Management argues, in its opposition brief, that the Cost Allocation Agreement merely acted to lay out how costs would be allocated among members of the corporate group for tax and accounting purposes and fails to support any inference that Hay Management adopted the forum selection clause. Pls.' Opp'n at 13. The plain terms of the cost allocation agreement, however, make clear that Hay Management explicitly agreed to assume *all* of the contractual obligations contained in the original employment agreement. 9/2/04 Thees Decl., Ex. C. There is absolutely nothing in the Cost Allocation Agreement that exempts Hay Management from the choice of law provision or the forum selection clause in the original Agreement. Thus, because the claims articulated by Hay Management fall under the forum selection clause, as discussed above, and because Hay Management has agreed to abide by the provisions of the original contract between

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
(Cite as: Slip Copy)

Page 8

HGIH B.V. and Schneider, its claims against Schneider must be pursued in the German Courts.

### 2. Plaintiffs Hay Acquisition, Hay Group, and Hay International

*8 With respect to the remaining three Plaintiffs, the Court finds that they are, in fact, bound by the choice of law provisions and the forum selection clauses contained in the original employment contract between Schneider and HGIH B.V. The Third, Seventh, and Ninth Circuits have determined that, in certain circumstances, a non-signatory to a contract may be bound by a forum-selection clause found therein. *See Coastal Steel*, 709 F.2d at 203 (holding that a third-party beneficiary of a contractual relationship is bound by the choice of law provision and forum selection clause); *Manetti-Farrow, Inc. v. Gucci Am., Inc.* 858 F.2d 509, 514 n. 5 (9th Cir.1988) (holding that a parent company to a contracting party and individual directors are bound by forum selection clause); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993) (holding that corporations owned and controlled by contracting party are bound by forum selection clause); *Jordan v. SEI Corp.*, 1996 WL 296540 *6 (E.D.Pa. Jun.4, 1996) (holding that entity 100% owned by contracting party and used to further purpose of original contract bound by forum selection clause).

In the Third Circuit, a third-party will not be bound by a forum selection clause in the absence of a certain relationship to either the contract containing the forum selection clause or the parties thereto. In the closely-analogous arbitration clause context, the Third Circuit explicitly stated its willingness to hold "a variety of nonsignatories ... bound by such agreements under ordinary common law contract and agency principles." *In re Prudential Ins. Co. of Am.*, 133 F.3d 225, 229 (3d Cir.1998) (citing *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923, 938 (3d Cir.1985), *overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1112 (3d Cir.1993)). In a situation more directly akin to the case at hand, in *Coastal Steel*, the Third Circuit found that a forum selection clause was binding on

a third-party beneficiary to a contract, as the non-signatory third-party beneficiary was so "closely related" to the dispute that it was "foreseeable" that it would be bound. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir.). The Court noted that such a holding was consistent with the general reluctance of courts to interfere with freely negotiated contracts and stated that to find otherwise would be "inconsistent with the law of contracts, which has long recognized that third party-beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable." *Id.* Schneider relies on *Coastal Steel* to argue that the Hay U.S. Companies should be bound by the forum selection clause in this instance as they were third party beneficiaries to the Employment Agreement.

The question for the Court, then, is whether the Hay U.S. Companies are third-party beneficiaries to the Employment Agreement. Under Pennsylvania law, there are two tests for third party beneficiary status. First, "a party becomes a third party beneficiary ... where both parties to the contract express an intention to benefit the third party in the contract itself." *Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147, 150 (Pa.1992). Second, a party not named in the contract may be classified as a third-party beneficiary where "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 150-51.

*9 The Court finds that the application of the second test articulated in *Scarpitti* leads to the conclusion that the Hay U.S. Companies enjoy third-party beneficiary status under the Employment Contract. Plaintiffs are correct to note that there is nothing in the Employment Agreement that required Schneider to assume the Presidency of the Hay U.S. Companies. Pls.' Opp'n at 9. The Agreement, however, does provide that Schneider will "serve as a Member of the Board of Directors or other governing body of each member of the Affiliated Companies," indicating that the parties intended

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

that Schneider serve the Hay companies in a variety of capacities, not solely as CEO of HGIH B.V. Thus, the contract created the right of the Hay U.S. Companies to benefit from Schneider's services as a high-ranking executive. The contract also created, as detailed above, the right of the Hay U.S. Companies to enjoy these services without malfeasance on the part of Schneider. Specifically, the parties (1) drafted a definition for termination taken for "just and reasonable cause" to include offenses against the Hay U.S. Companies and (2) included language that limited Schneider's ability to compete with the Hay U.S. Companies by misappropriating their trade secrets and confidential information.

Plaintiffs' claims that Schneider's employment as President of those entities arose independently of his position at HGIH B.V. is belied by the fact that Schneider accepted absolutely no additional compensation for taking on those positions nor assented to any other change in his existing Employment Agreement. This indicates to the Court that the parties understood from the inception of his employment as HGIH B.V. CEO that he would take on some governance functions at the Hay subsidiaries as part of his existing Employment Agreement with HGIH B.V. and pursuant to the terms contained therein.

Moreover, using the language of the Third Circuit in *Coastal Steel,* it should have been perfectly " foreseeable" by the Hay U.S. Companies that any issues arising out of Schneider's employment as a high-level executive in the Hay conglomerate of entities would be governed by his Employment Agreement with HGIH B.V. This is especially so because the Employment Agreement was signed by Chris Matthews, who was not only the Chairman of the Board of HGIH B.V. but the Chairman of the Board of all the Hay U.S. Companies as well. Moreover, the Employment Agreement's provides for Schneider's termination for acts of corporate malfeasance taken against the Hay U.S. Companies. As the Employment Agreement further provides that the resolution of any legal dispute arising out of the contract shall take place in Germany, it can only be concluded that any contest over whether Schneider was terminated for cause for acts of

malfeasance against the Hay U.S. Companies would have to be litigated in Germany. Given this combination of circumstances, the Court finds that it should have been perfectly foreseeable that the Hay U.S. Companies might have to litigate in the German courts at the time Chris Matthews, the head of the Hay U.S. Companies, signed the Employment Agreement.

**\*10** Given the above, the Court finds that the Employment Agreement, when read as a whole, indicates that the Schneider and HGIH B.V. intended to delineate the conditions of and duties arising out of Schneider's new employment relationship with HGIH B.V. *and* the "Affiliated Group," which includes the Hay U.S. Companies. It is clear that the parties understood that Schneider's employment with the Hay Companies would include positions at both parent and subsidiary level, and the parties therefore took steps in drafting the contract to benefit and protect the subsidiaries. As the Court finds that the Plaintiffs in this matter are third-party beneficiaries to the Employment Agreement, it finds under the holding in *Coastal Steel* that it is proper for the non-signatory Plaintiffs in this case to be considered bound by the forum selection clause.

### 3. Dismissal Without Prejudice

For the reasons stated above, the Court will enforce the forum selection clause contained in Schneider's Employment Agreement against all Plaintiffs. The Court notes, however, that the existence of a forum selection clause does not oust a court of subject matter jurisdiction. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Hay U.S. Companies stress in their pleadings that they have a motion to dismiss pending in the German courts and that a dismissal in this Court followed by a subsequent dismissal in that forum would leave Plaintiffs without a legal avenue to pursue their claims against Schneider. The Court is mindful of this situation and reiterates that its refusal to entertain the instant action is based on its belief that, though it has jurisdiction, it should decline to exercise it at this time. Should the German courts decline to exercise

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 10

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

their jurisdiction over these claims at some later date, Plaintiffs should certainly continue to have access to the courts of the United States in order to have the merits of their claims fully and fairly considered. Therefore, Plaintiffs' claims against Schneider shall be dismissed without prejudice.

### III. INTERNATIONAL COMITY

Both Defendants Schneider and Boller-Bockius contend that this Court should dismiss or stay the present action in favor of the first-filed, pending, and parallel litigation in Germany in which they are the named plaintiffs. As the Court determined above that the Plaintiffs' claims against Schneider should be dismissed due to the forum selection clause in his Employment Agreement, it will analyze the comity arguments as they apply to Boller-Bockius only. FN7 "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the So. Dist. of Iowa,* 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 96 L.Ed.2d 461 (U.S.1987). FN8 It permits the "recognition of foreign proceedings to the extent that such proceedings are determined to be orderly, fair and not detrimental to the nation's interests." *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,* 165 B.R. 379, 384 (S.D.N.Y.1994).

> FN7. Though the Court will not fully analyze Schneider's claim that international comity would require a stay or dismissal of the instant claims against him, the Court notes that its preliminary review of the applicable law and facts reveals that his litigation in Germany is parallel to that before this Court and that application of the *Paraschos* factors would likely lead to a stay or dismissal of this action in favor of that taking place in the German court.

> FN8. Because this is a diversity case, it is possible that Pennsylvania law would apply to the substantive issues of comity.

Because the parties do not address this in their briefs, the Court will apply well-settled Third Circuit precedent. *See Philadelphia Gear Corp. v. Philadelphia Gear de Mexico,* 44 F.3d 187, 191 n. 4 (3d Cir.1994).

**\*11** Principles of international comity permit a district court, in its discretion, to dismiss or stay a case over which it has subject matter jurisdiction in deference to the laws and interests of another foreign country. *Lexington Ins. Co. v. Forrest,* 263 F.Supp.2d 986, 1002 (E.D.Pa.2003); *Paraschos v. YBM Magnex Int'l, Inc.,* 130 F.Supp.2d 642, 645 (E.D.Pa.2000). The Third Circuit has stated that " [c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico,* 44 F.3d 187, 191 (3d Cir.1994) *cited in Paraschos,* 130 F.Supp.2d at 645. Comity, therefore, is not extended to foreign proceedings where doing so would be contrary to the public policy of the United States. *Philadelphia Gear Corp.,* 44 F.3d at 191; *Paraschos,* 130 F.Supp.2d at 645 (citation omitted). Courts have also declined to extend comity where the suits at issue are neither duplicative nor parallel. *See, e.g., Lexington Ins. Co.,* 263 F.Supp.2d at 1002.

A threshold question for this Court, then, is whether the instant action is "parallel" to those brought by Schneider and Boller-Bockius in Germany. An action is parallel to another action where " substantially all the same parties are contemporaneously litigating substantially the same issues in another forum." *Paraschos v. YBM Magnex Int'l, Inc.,* 2000 WL 325945 at \*5 (E.D.Pa. Mar.29, 2000) (citation omitted). While the cases are not required to be identical, "the issues must be sufficiently similar, in that there must be a ' substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case." ' *Id.* (citing *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 695 (7th Cir.1985)).

The Court finds that the cases are parallel. First, the parties are certainly "substantially similar." In her German court action, Boller-Bockius is seeking

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

payment under the benefit agreements into which she and Schneider entered in 2003. According to the attorney representing Plaintiffs in the German court action, she has added the Hay U.S. Companies in her claims for damages. 2/17/05 Schuster Decl. at ¶ 8. Boller-Bockius has also joined Schneider's suit, which names all the Plaintiffs in this case as defendants. [FN9]

> FN9. While the claims of Boller-Bockius have been severed from Schneider's claims by the German Labor Court, there is nothing in the record that indicates that her part of his suit against Plaintiffs is not still active in the German Labor Court.

Second, the issues being litigated are substantially the same in both forums. Plaintiffs' German counsel has defined the issues in that case to encompass whether or not those agreements were duly authorized under German corporate law and whether Boller-Bockius and Schneider negotiated these contracts at arm's length. *Id.* While Plaintiffs argue that these issues are completely unrelated to those before this Court, the Court finds the opposite to be true. In the instant action, Plaintiffs allege that Boller-Bockius and Schneider inappropriately and clandestinely entered into these severance agreements and that their concealment from the Hay executives and the Hay Germany auditors caused financial harm to the Hay U.S. Companies. A review of Hay Germany's defenses in the German action reveals that the German court is being asked to determine factual and legal issues related to whether Boller-Bockius is due payment under those severance agreements. These requested determinations include whether any of the alleged wrongdoings in this case would prevent her from obtaining payments under those agreements. As the Plaintiffs in this case have been joined to the case against Hay Germany, this Court expects that they will pursue the same defenses with vigor. While the exact legal claims pursued in this Court by Plaintiffs and the defenses asserted in Germany are not identical, they need not be. *See Paraschos,* 2000 WL 325945 at *5. The Court thus finds the actions parallel for purposes of this international comity analysis.

*12 Once a district court has found that litigation is parallel to that taking place in the courts of a foreign sovereign, it must look for "extraordinary circumstances" that necessitate dismissal, which include (1) the desirability of avoiding duplicative litigation, (2) the inconvenience of the domestic forum, (3) the governing law, (4) the order in which jurisdiction was obtained in each forum, (5) the relative progress of each proceeding, and (6) the contrived nature of the domestic claim. *Id.* In the absence of such extraordinary circumstances, the district court should retain jurisdiction over the action. *Id.* Though the Third Circuit has not yet spoken on what standard governs the issuance of a stay where parallel litigation is pending in a foreign jurisdiction, other courts have found that the factors determining the appropriateness of a stay are " virtually identical" to those determining that of a dismissal. *See Lexington Ins. Co. v. Forrest,* 263 F.Supp.2d 986, 1005 (E.D.Pa.2003) (citing *Nat'l Union First Ins. Co. of Pittsburgh v. Kozeny,* 115 F.Supp.2d 1243 (D.Colo.2000)).

In their motion, Defendants make much of the "first filed" rule, under which "comity counsels that priority generally goes to the suit filed first." *Ronar, Inc. v. Wallace,* 649 F.Supp. 310, 318 (S.D.N.Y.1986). The Third Circuit has defined the " first filed rule" as providing that, where similar cases have been filed in different federal district courts, "it (is) the duty of the court first obtaining jurisdiction to enjoin the prosecution in the other court." *Triangle Conduit & Cable Co., Inc. v. Nat'l Elec. Prods. Corp.,* 125, F.2d 1008, 1009 (3d Cir.), *cert denied,* 316 U.S. 676 (1942). The Court first notes that Defendants have not asked this Court to enjoin the German proceedings, a situation in which this rule would be applicable. Moreover, the Third Circuit has declined to apply this rule where the two courts involved are not courts of the same sovereignty, as such an action would "involve[ ] delicate questions of comity" and could be "taken only with care and great restraint." *Compagnie des Bauxites de Guinea v. Ins. Co. of North Am.,* 651 F.2d 877, 887 n. 10 (3d Cir.1981) (citing *Canadian Filters (Harwich), Ltd. v. Lear-Siegler, Inc.,* 412 F.2d 577, 578 (1st Cir.1969). The Court will not consider the "first filed" rule to apply in this case

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 12

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
(Cite as: Slip Copy)

such that it mandates automatic dismissal or a stay in favor of the action pending in Germany, but will instead treat the order of filing and subsequent progression of the German and instant cases as relevant under the above-cited five factor analysis articulated in *Paraschos.*

Plaintiffs correctly note in their opposition memorandum that neither a conflict of law problem nor the earlier filing of a foreign action is *per se* an extraordinary circumstance requiring dismissal or a stay under the *Paraschos* standard. The Court believes that the combination of circumstances in the instant case, however, is so extraordinary as to require the stay of the current action, pending resolution of the German court litigation. The Court will exercise its discretion to stay, rather than dismiss, the instant litigation in order to facilitate the resolution of any claims against Boller-Bockius that remain at the conclusion of the litigation in Germany, particularly Plaintiffs' claim that she be declared joint and severally liable for any damages owed them by Schneider and Plaintiffs' civil conspiracy claim.

**\*13** Principles of judicial economy, especially the need to avoid duplicative and piecemeal litigation, mandate a stay of the current action. *See, e.g., Ingersoll Milling Mach. Co. v. Granger,* 833 F.2d 860, 685 (7th Cir1987). To begin, at least two of Plaintiffs' claims against Boller-Bockius are dependant upon Plaintiffs' claims against Schneider, which the Court has ruled must proceed in the German courts. First, Plaintiff requests a declaratory judgment that Boller-Bockius is joint and severally liable for Schneider's liability to Plaintiffs. Pls.' Compl. at ¶ 199. As the Court has determined that the existence of that liability should be litigated in the German courts, this Court cannot possibly render such a judgment until Schneider's underlying liability is determined in that forum. Second, Plaintiffs have filed a claim of civil conspiracy against Boller-Bockius, along with Schneider and Bhula. *Id.* at ¶¶ 234-244. As Plaintiffs point out in their memorandum in opposition to the instant motion, adjudicating the conspiracy claims against Boller-Bockius (and Defendant Bhula) while the claims against Schneider, whom they describe as the "lead

conspirator and central witness" are being litigated in Germany would be "bizarre." Pls.' Opp'n at 13.

Plaintiffs also allege that Boller-Bockius breached her fiduciary and legal duties when she assisted Schneider in obtaining an improper 2002 bonus payment and in investigating Mr. Kaye; when she accepted improper compensation and benefits; when she failed to inform the Hay Germany auditors of her severance agreement; and when she falsely certified the Hay Germany financial results. Pls.' Compl. at ¶¶ 200-211. Plaintiffs further allege that Boller-Bockius engaged in a negligent and intentional misrepresentation by failing to inform the Hay Germany auditors of the severance agreement and subsequently certifying incorrect Hay Germany financial results. *Id.* at ¶¶ 212-219. As discussed above, the German court is being asked by the parties in the German litigation to determine whether these actions affect the validity of Boller-Bockius' severance agreement and her ability to be compensated under it. Moreover, Plaintiffs will be asking the German courts to making findings of fact and law regarding Schneider's involvement in these identical events. To allow both the German litigation and the claims against Boller-Bockius before this Court to proceed in tandem would be to expose almost all of the parties to the risk of inconsistent and potentially unenforceable judgments.

The Court also finds that the German courts' interest in hearing the instant dispute between Boller-Bockius and the Hay Companies is strong. Boller-Bockius is a German citizen and Plaintiffs have not alleged that she ever held a position at any company but Hay Germany, an entity organized under German laws. Moreover, all of the alleged wrongdoings that Plaintiffs attribute to Boller-Bockius took place in Germany-the use of Hay Germany funds to obtain Schneider's secret bonus payment, the authorization of payments to Schneider's legal team, the acceptance of salary, benefits, and severance agreements not commensurate with her experience, the concealment of her severance agreement, and the false certification of the Hay Germany 2003 Fiscal Year audit. Pls.' Compl. at ¶¶ 50, 54, 63, 127, 129, 136, 142. As stated above, Plaintiffs claim that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 13

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**

primary effects of these wrongdoings was felt by Hay Germany prior to those effects trickling down to the remainder of the Hay companies as a result of their worldwide consolidated financial statements. Given such circumstances, the Court believes that a stay of the instant action will most appropriately place matters concerning the conduct of a German citizen alleged to have perpetrated a direct fraud upon a German business entity before the German courts.

*14 In addition, the German courts seem well on their way to resolving the Boller-Bockius litigation. A hearing on the merits of her claims against Hay Germany and Plaintiffs is scheduled for May 11, 2005. 3/4/05 Thees Decl. at ¶ 7. This Court has not yet held a Rule 16 conference with the parties nor has it issued a scheduling order to guide the motion and discovery process in this case. The Court believes that the procedural posture of the two cases, in addition to the more substantive concerns expressed above, further militates in favor of a stay of the instant matter.

Lastly, there is no evidence before the Court that would indicate that a dismissal or stay of this action would be contrary or prejudicial to the interests and public policy of the United States. While the United States does generally have an interest in protecting the rights of the business entities incorporated within its borders, the claims against Boller-Bockius in this case involve harms that were done primarily to a German business entity. Plaintiffs have not offered any evidence to the Court that would compel a finding that this Court's continued jurisdiction over its Boller-Bockius claims is necessary to protect the interests of this country.

## IV. CLAIMS AGAINST DEFENDANT SURESH BHULA

Defendant Suresh Bhula has not moved for dismissal or a stay of the instant action. Nevertheless, the Court finds that the entirety of this action, including the claims against Bhula, should be stayed pending resolution of Schneider and Boller-Bockius' claims by the German courts.

Plaintiffs articulate two claims against Bhula in their complaint: (1) a civil conspiracy claim, which also names Schneider and Boller-Bockius as defendants and (2) a claim for breach of fiduciary and legal duties arising from the various forms of assistance Bhula allegedly provided to Schneider. The Court will not detail the specific allegations underlying Plaintiffs' claims against Bhula, but notes that many, though not all, of the actions he has been accused of taking at Schneider's behest are all issue in Schneider and Boller-Bockius' German litigation. The same concerns for judicial efficiency that animate the Court's finding that the claims against Boller-Bockius should be stayed pending resolution of all parallel German litigation compel the Court to similarly stay Plaintiffs' claims against Bhula. The entirety of the instant action, therefore, will be stayed until the German courts resolve the outstanding litigation between Schneider, Boller-Bockius, and the various Hay entities.

## V. CONCLUSION

For all the forgoing reasons, Defendant Schneider's Motion to Dismiss is GRANTED with respect to all Plaintiffs, as they are required to abide by the forum selection clause in Schneider's Employment Agreement. The Court will dismiss Plaintiffs' claims without prejudice, in order to preserve their ability to be heard on the merits should the German Courts decline jurisdiction over their claims despite the existence of the forum selection clause.

*15 Defendant Boller-Bockius' Motion to Stay is granted with respect to all Plaintiffs, as the Court finds that to do so is proper under the doctrine of international comity. Moreover, the Court will stay the instant action in its totality, including the claims against Defendant Suresh Bhula, in order to prevent the confusion and waste of judicial resources that would result from this Court and the German court's consideration of the same factual and legal questions.

An appropriate Order follows.

## ORDER

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 1017804 (E.D.Pa.)
**(Cite as: Slip Copy)**


AND NOW, this 28th day of April, 2005, presently
before the Court is the Motion to Dismiss or to Stay
filed by Defendants Bernd Schneider and Lucie
Boller-Bockius (Doc. No. 19). It is hereby
ORDERED that:
1. Defendant Schneider's Motion to Dismiss is
GRANTED with respect to all Plaintiffs.
2. Plaintiffs' claims against Schneider shall be
dismissed without prejudice.
3. Defendant Boller-Bockius' Motion to Stay is
GRANTED with respect to all Plaintiffs.
4. The present action shall be STAYED in its
totality until the German Courts conclude the
parallel, pending litigation involving both
Defendants Schneider and Boller-Bockius. This
stay necessarily includes Plaintiffs' claims against
Defendant Suresh Bhula.


E.D.Pa.,2005.
Hay Acquisition Co., I, Inc. v. Schneider
Slip Copy, 2005 WL 1017804 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2695433 (Trial Pleading) Complaint
(Mar. 22, 2004)
• 2:04cv01236 (Docket) (Mar. 22, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.