UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TOSHIBA CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CYBERHOME ENTERTAINMENT, INC. )<br>)<br>Defendant. ) | Civil Action No. 05-00757 (KAJ) |

STATE OF CALIFORNIA        )
                           ):SS.
COUNTY OF ALAMEDA          )

JAMES J. CARROLL, duly sworn, deposes and says:

1. I am General Counsel for Defendant CyberHome Entertainment, Inc. ("CyberHome"). I make this declaration in support of CyberHome's motion to dismiss or transfer venue, or, alternatively, to stay the case. I am fully familiar with the facts stated herein.

2. CyberHome is a California corporation with offices located at 48350 Fremont Boulevard, Fremont, California. CyberHome distributes DVD players. It does not, itself, manufacture DVD players. CyberHome buys DVD players from its manufacturer, Citron Electronics Company, Ltd. ("Citron"), in California and then re-sells them as CyberHome products to consumers and large nationwide retailers.

3. CyberHome maintains no facilities, no employees and no corporate presence in Delaware. CyberHome's counsel in this litigation have offices located in New York.

4. Citron is a British Virgin Islands corporation with its principal place of business in Sheung Shui, Hong Kong.

5. On July 22, 2004, Toshiba, as agent for and on behalf of a group of several entities called the DVD6C Licensing Group that purported to hold essential patents for DVD

technology and formats, issued a license for the 6C DVD patents (the "DVD Patents") to Citron and its Affiliates pursuant to a DVD Patent License Agreement (the "DVD License"). A copy of the DVD License executed by Citron and Toshiba, on behalf of itself and as agent for the DVD6C Licensing Group, is attached hereto as <u>Exhibit A</u>.

6. Among other provisions, the DVD License granted Citron "<u>and its Affiliates</u> a non-exclusive, non-transferable license to make, have made, use, import, offer for sale, sell, and otherwise dispose of DVD Products under the DVD Patents" in, and pursuant to the conditions of, the DVD License. (Exhibit A, § 2.1 Ex. 3.) (emphasis added). "Affiliates," is defined under the DVD License as "any corporation, firm, partnership, proprietorship, or other form of business entity, in whatever country organized or resident, directly or indirectly controlled by such party." (Exhibit A, Ex. 3, ¶ 1.13.) Under this definition, CyberHome is an "Affiliate" of Citron for purposes of the DVD License.

7. The DVD License contains a release by Toshiba and the DVD6C Licensing Group of Citron, its Affiliates, and their respective customers of any and all claims of infringement of the DVD Patents arising from Citron's and/or any its Affiliates' making, using, importation, offering for sale, sale or disposal by any other means of the DVD products for the period prior to the Effective Date of the DVD License, pursuant to certain conditions incorporated into the DVD License through Exhibit 3 to the DVD License entitled "DVD Patent License Conditions." (Exhibit A, § 2.3 and Ex. 3.)

8. Thus, pursuant to the DVD License, Citron and its Affiliates, including CyberHome, owed no royalties or other payments to Toshiba for sale or other use or disposal of DVD Products prior to the Effective Date of the License. (Exhibit A, Ex. 3, ¶ 2.1.) After the Effective Date of the DVD License, the DVD players Citron sold to CyberHome were licensed under the DVD License, which includes the six patents-in-suit.

17507248\V-2

9. Of great import here, the DVD License explicitly "inure[s] to the benefit" of the parties "and each of their respective Affiliates" (including CyberHome) and assigns. (Exhibit A, § 6.5.)

10. The DVD License also contains a broad venue and jurisdiction provision. Specifically, the parties agreed that any dispute arising out of or in connection with the interpretation or execution of the DVD License Agreement would be settled by the federal or state courts located in the county of New York in the state of New York. (Exhibit A, § 6.4.) The parties also agreed that they submitted to the jurisdiction of such courts for the resolution of such disputes and waived any objection to the venue of any such action or proceeding in New York. (*Id.*) Lastly, the parties agreed that the DVD License was to be governed and construed according to New York law, and without regard to the conflicts of laws principles thereof. (Exhibit A, § 6.3.)

11. The initial period of the DVD License was from the Effective Date, July 22, 2004, to December 31, 2007. (Exhibit A, § 5.1.) The DVD License includes automatic five (5) year renewal terms unless Citron notifies Toshiba that it intends to terminate the DVD License. Id.

12. The DVD License also is terminable by either party upon thirty days written notice specifying the nature of the material breach or failure to perform a material obligation not timely remedied after notice. (Exhibit A, § 5.3.)

13. In May of 2005, Toshiba notified Citron that it believed that Citron was in material breach of the DVD License. Citron disputed Toshiba's allegation that it was in material breach.

14. On July 20, 2005, Toshiba notified Citron that it would terminate the DVD License effective August 19, 2005 unless Citron cured the alleged material breach of the DVD License.

15. However, the notice provided to Citron by Toshiba did not set forth details of the nature of Citron's alleged material breach with the requisite specificity required by Section 5.3 of the DVD License.

16. In addition, although the context of Toshiba's claim for material breach involved an alleged underreporting of royalties, Toshiba's notice failed to invoke the proper provisions and mechanisms of the DVD License through which the parties had agreed to resolve such dispute.

1. On or about August 8, 2005, in an effort to insure that CyberHome's supply of product would not be interrupted, I contacted Toshiba in response to Toshiba's July 20, 2005 correspondence. I explained to Toshiba that Citron believed its royalty payments were in compliance with the DVD License, but that Citron would need additional information to determine whether certain DVD recordable drives were in fact covered by the DVD Patents. I further stated to Toshiba that Citron was willing to pay royalties on these devices if such payments were determined to be due under the DVD License and that Citron would like to discuss the matter further with Toshiba to reach a resolution.

18. In addition, with respect to any additional royalties alleged to be due and owing as well as certain purported deficiencies in reporting requirements claimed by Toshiba, Citron restated its position that it was in compliance with the DVD License and requested that Toshiba work with Citron to resolve any issues relating to Toshiba's claim that Citron breached the DVD License and Toshiba's decision to purportedly terminate the DVD License.

19. Nevertheless, Toshiba was unyielding in its insistence that Citron cure the alleged defaults in their entirety by August 19, 2005 -- the claimed termination date.

17507248\V-2

2. Additional discussions between Citron and Toshiba were unavailing. Left with little choice, Citron was forced to acquiesce to Toshiba's demand regarding royalties due under the DVD License.

21. At that time, the parties agreed to meet to discuss the alleged breach and threatened termination, and Toshiba agreed to suspend its anticipated termination and, correlatively, Citron's time to cure the alleged breach, in order to facilitate the discussions.

3. On August 23 and 24, 2005, I met with Toshiba representatives in person in Tokyo, Japan to discuss the licensing dispute.

23. On September 1, 2005, Citron tendered a full cure of the alleged breach under the DVD License by offering full payment of all royalties that Toshiba previously alleged were due under the DVD License, but, according to Toshiba, remained unpaid, as well as interest for the alleged underpayment.

24. Despite Citron's unconditional and full tender of amounts allegedly due under the DVD License, Toshiba "terminated" the DVD License on October 31, 2005, without good cause and any legal basis to do so, and without any written notice as to the alleged inadequacy of Citron's tender. Toshiba purported to terminate the DVD License retroactively, effective August 19, 2005.

25. The same day it purported to terminate Citron's DVD License, October 31, 2005, Toshiba brought suit against CyberHome, a Citron Affiliate under the DVD License, for patent infringement.

26. To protect its rights under the DVD License, Citron instituted suit against Toshiba in the District Court for the Southern District of New York on December 19, 2005. A copy of the Complaint is attached hereto as <u>Exhibit B</u>.

Dated: December 19, 2005

*/s/ James J. Carroll*
JAMES J. CARROLL