# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CITRON ELECTRONICS COMPANY, LTD.,

    *Plaintiff,*

-against-

TOSHIBA CORPORATION,

    *Defendant.*

------------------------------------------------------------X

JUDGE McKENNA

**05 CV 10626**

Civil Case No.:

**COMPLAINT AND
JURY DEMAND**

RECEIVED
DEC 1 9 2005
U.S.D.C. S.D.N.Y.
CASHIERS

Citron Electronics Company, Ltd., ("Citron") by and through its attorneys, Sonnenschein Nath & Rosenthal LLP, for its complaint against Toshiba Corporation individually and as Authorized Licensor under the DVD6C Patent License Agreement for the benefit of the DVD6C Licensing Group ("Toshiba"), alleges, except where otherwise stated, upon knowledge, as follows:

### PRELIMINARY STATEMENT

1. This action arises out of Toshiba's material breach and wrongful attempt to terminate a DVD Patent License Agreement effective as of July 22, 2004 (the "License Agreement") with Citron. In May 2005, despite Citron's assertions and evidence to the contrary, Toshiba falsely claimed that Citron was in material breach of the License Agreement and wrongfully threatened to terminate that agreement based on these false claims. Toshiba demanded immediate payment of certain amounts allegedly due from Citron under the License Agreement as royalty payments as well as amounts relating to sales made by Citron's affiliates prior to the effective date of the License Agreement. Citron disputed and continues to dispute those amounts and Toshiba's calculations, and whether such amounts are due. Having no choice, as the termination of the License Agreement would result in a cataclysmic impact on Citron's and its affiliates'

businesses, Citron was forced to yield to Toshiba's unreasonable demands and agreed to remit the funds allegedly due and owing under the License Agreement. Despite the express provisions of the License Agreement that require Toshiba to give Citron an opportunity to cure any alleged material breach before terminating the License Agreement, Toshiba ignored Citron's offer to cure the alleged breaches, and summarily and wrongfully stated that it was terminating the License Agreement in contravention of Citron's deadline to cure and Toshiba's agreement to extend the termination period. The day that it stated it was terminating the License Agreement, Toshiba filed a patent infringement lawsuit against Citron's customer and affiliate, CyberHome Entertainment, Inc. ("CyberHome") in Delaware, also in breach of the forum selection clause in the License Agreement.

2. Pursuant to an agreement between Citron and CyberHome, Citron has an obligation to defend CyberHome with respect to the infringement of any third party patents covering the products that it sells to CyberHome.

3. By virtue of Toshiba's breach and wrongful attempt to terminate the License Agreement, and initiation of a lawsuit against CyberHome, Citron has a real apprehension of being sued by Toshiba for patent infringement and having to defend against Toshiba's claims that CyberHome is infringing Toshiba's patents resulting from the sale of the products sold by Citron to CyberHome.

4. By reason of the foregoing, Citron has been damaged in an amount to be proven at trial. Furthermore, Toshiba's wrongful attempt to terminate the License Agreement will irreparably and immeasurably harm Citron and its affiliate, CyberHome.

5. By reason of the foregoing, an actual, justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

## THE PARTIES

5. Plaintiff Citron is a corporation organized under the laws of the British Virgin Islands with its principal place of business at Unit 104, 1/F, Kerry Warehouse (Sheung Shui) 2 San Po Street, Sheung Shui, N.T., Hong Kong.

6. Upon information and belief, Defendant Toshiba is corporation organized under the laws of Japan with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. Toshiba, upon information and belief, has its corporate United States headquarters at 1251 Avenue of the Americas, New York, New York.

7. The relief sought in this action is intended to bind Toshiba individually, and as the representative of each of the members of the DVD6C Licensing Group.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over the subject matter of this lawsuit under the laws of the United States concerning actions relating to patents, 28 U.S.C. §§ 1331 and 1338(a), and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction over the state law breach of contract, Breach of the Covenant of Good Faith and Fair Dealing claims as well as the requests for a declaration of contract rights and specific performance pursuant to 28 U.S.C. §1367.

9. Venue is proper in this District pursuant to 28 U.S.C. 1400(b) in that it is an action for a declaration of invalidity and non-infringement of a U.S. patent arising under the patent laws of the United States and 28 U.S.C. §§ 1391(b) and (c) in that Toshiba is subject to the personal jurisdiction of this Court at the time of commencement of this action. Venue is further proper in this District pursuant to Rule 13 of the Federal Rules of Civil Procedure.

10. Venue is also proper in New York County pursuant to New York C.P.L.R. §§ 501 and 503 and by virtue of a forum selection clause in the License Agreement whereby the parties

-3-

17506951\V-2

agreed unconditionally to submit to venue in the federal and state courts of the State of New York, New York County. License Agreement § 6.4.

11.  Personal Jurisdiction is proper over the Parties in this Judicial District. Under the License Agreement, both Toshiba and Citron unconditionally have submitted to the jurisdiction of the state and federal courts located in the county of New York in the state of New York in respect of any disputes arising out of or in connection with the interpretation or execution of the License Agreement. License Agreement § 6.4.

12.  Moreover, Toshiba has maintained substantial and continued contact with New York for many years. Toshiba has its corporate headquarters in New York County and is authorized to do business, and has done and continues to do business, and has transacted and continues to transact business in the City and State of New York. Toshiba regularly conducts and solicits business, engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in the State of New York. Moreover, Toshiba expected or reasonably should have expected that its acts would have consequences in the State of New York and it derives substantial revenue from interstate and international commerce.

## BACKGROUND FACTS

### The License Agreement

13.  Citron and its affiliates are the non-exclusive licensees of certain DVD patents (the "DVD Patents") held by Toshiba. Pursuant to the License Agreement executed by Citron and Toshiba effective as of July 22, 2004 (the "Effective Date"), Toshiba licensed to Citron and its affiliates certain rights to make, have made, use, import, offer for sale, sell and otherwise dispose of DVD players, decoders, encoder and recorders (the "DVD Products") under the DVD Patents pursuant to the conditions of the License Agreement and in exchange for royalty payments.

17506951\V-2

License Agreement at § 2.1. A true and correct copy of the License Agreement is attached hereto as Exhibit A.

14. The License Agreement states that Toshiba releases Citron, its affiliates and their respective customers from any and all claims of infringement of the DVD Patents arising from Citron's and/or its affiliates' making, using, importation, offering for sale, sale or disposal by other means of the DVD Products for the period prior to the Effective Date of the License Agreement pursuant to the Conditions of Exhibit 3 to the License Agreement. License Agreement § 2.3.

15. Pursuant to the release, Citron and its affiliates owned no royalties or any other payments to Toshiba with respect to any and all sales of DVD Products prior to the Effective Date of the License Agreement. Exhibit 3 of the License Agreement § 2.1.

16. Toshiba and Citron as well as each of their respective affiliates and permitted assigns, including CyberHome, are beneficiaries of the License Agreement. License Agreement § 6.5.

17. The License Agreement is governed and construed according to the laws of New York, as if the License Agreement was performed within New York, and without reference to the conflicts of laws principles thereof. License Agreement § 6.3.

18. The License Agreement was to continue from the Effective Date until December 31, 2007 unless earlier terminated pursuant to its terms and provides that it automatically will be renewed for an additional five (5) year term unless Citron notified Toshiba that it intended to terminate the License Agreement. License Agreement § 5.1.

19. Either party to the License Agreement can terminate that agreement at any time on thirty (30) days' written notice to the other party in the event of a material breach or failure to perform any material obligation under the License Agreement by the other party and such default is not

remedied within thirty (30) days after notice is provided specifying the nature of the default. License Agreement § 5.3.

20.   The License Agreement provides as a remedy for any errors in the calculation or determination of royalties by Citron the payment of a penalty of two percent (2%) interest per month on the amounts that were underpaid (Exhibit 3 of the License Agreement § 2.14), and provides for the right of the Licensor (i.e., Toshiba) to audit the books and records of Citron should Toshiba believe that the royalty calculations or payments were incorrect (Exhibit 3 of the License Agreement § 2.15).

**Toshiba's Bad Faith Purported Termination of the License Agreement**

21.   Toshiba wrongfully attempted to terminate the License Agreement, in breach of the contract terms and in breach of Toshiba's subsequent agreement to extend the termination and cure period.

22.   Specifically, on or about May 10, 2005, Toshiba advised Citron that it believed Citron was in material breach of the License Agreement due to alleged underreporting of royalties amounts due and provided Citron with 30 days to cure the alleged default.

23.   The notice failed to provide specific notice as required by Section 5.3 of the License Agreement and, more importantly, it failed to invoke the proper provision and mechanism (i.e., audit right) as provided in the License Agreement for confirming any alleged underreporting of royalties.

24.   A representative of Citron responded to Toshiba by providing documentation demonstrating Citron's compliance with the License Agreement.

25.   On or about July 20, 2005, despite Citron's evidence to the contrary, Toshiba notified Citron that it was terminating the License Agreement effective August 19, 2005 based on Citron's alleged material breach of that agreement, giving Citron until August 19, 2005 to cure

17506951\V-2

its purported default. Toshiba again failed to provide proper notice to Citron and failed to invoke the proper provision and mechanism for confirming any alleged underreporting of royalties.

26.   In response, on or about August 8, 2005, a representative of Citron notified Toshiba that although it believed Citron's royalty payments were in compliance with the License Agreement, Citron needed additional information to determine whether certain DVD recordable drives were covered by the DVD Patents. Citron further stated that it was willing to pay royalties on these devices if such payments were determined to be due under the License Agreement and that Citron would like to discuss the matter further with Toshiba to reach a resolution. In addition, with respect to any additional royalties due and owing as well as certain reporting requirements, Citron restated its position that it was in compliance with the Licensing Agreement. Finally, Citron requested that Toshiba work with Citron to resolve any issues relating to Toshiba's claim that Citron breached the Licensing Agreement and Toshiba's decision to terminate such agreement.

27.   On or about August 15, 2005, only after a Citron representative requested a response to its August 8, 2005 communications due to the time constraints imposed by Toshiba's August 19, 2005 cure date, Toshiba reiterated its position that it had terminated the License Agreement effective August 19, 2005. Toshiba was unyielding in its demands for Citron to cure the alleged defaults in their entirety.

28.   After additional discussions between Citron's representative and Toshiba proved to be unavailing, left with little choice, Citron was forced to concede to Toshiba's unreasonable demands regarding royalties due under the License Agreement. Specifically, by email dated August 18, 2005 - one day before Toshiba's claimed termination date - Citron's representative stated

> [e]ffectively, you have us over a barrel as we can either agree to settle with you or cease manufacturing and selling DVD players

-7-

> and recorders. This latter choice would result in the loss of several thousand jobs here, in Europe, and in China, and is thus entirely unacceptable.
> It is time for us, therefore, to chat about settlement numbers and come to an agreement allowing CyberHome to make scheduled payments to 6C to clear up any outstanding issues..... Since we have agreed to settle, I ask that 6C refrain from cancellation of the Citron license and permit you and I time to resolve this matter and allow our companies to go forward working together.

29. By response email of that same date, Toshiba confirmed to Citron that it would suspend the termination of the License Agreement for a reasonable period in order to allow the parties to enter good faith settlement negotiations with regard to Toshiba's allegations of material breach and Citron's cure.

30. In an effort to resolve the dispute, thereafter Citron's representatives flew to Tokyo, Japan on August 23 and 24 to conduct good faith negotiations with Toshiba.

31. On or about September 1, 2005, counsel for Citron tendered cure of the alleged breach by offering full payment of all royalties that Toshiba previously alleged were due under the License Agreement, but remained unpaid as well as interest for the alleged underpayment.

32. The next day, Toshiba reconfirmed its agreement to suspend the termination of the License Agreement despite Toshiba's previous termination notice, but made no indication as to its acceptance of Citron's offer of an unconditional and complete cure of its alleged breach of the License Agreement.

33. On October 31, 2005, without good cause and any legal basis to do so, without any written notice as to the alleged inadequacy of Citron's tender, and without first notifying Citron that it was reneging on its agreement to extend the termination period and, correlatively, Citron's time to cure, Toshiba rejected Citron's offer to cure and asserted that it was terminating the License Agreement retroactively to an effective termination date of August 19, 2005.

175069511V-2

34. As a basis for terminating the License Agreement, Toshiba claimed that Citron's offer to cure on September 1, 2005, proffered while the parties were in the midst of settlement negotiations and merely one week after Citron's representatives traveled to and conducted settlement negotiations in Japan, was untimely, despite Toshiba's own agreement to extend the termination and cure timetable.

35. On October 31, 2005, Toshiba also filed a lawsuit against Citron's customer and affiliate, CyberHome, in the District of Delaware for infringement of six Toshiba patents ("Delaware Action").

36. The patents asserted against CyberHome in the Delaware Action are as follows: U.S. Patent Nos. 5,587,991; 5,732,185; 6,009,433; 6,128,434; 6,226,727; and 6,374,040 ("Toshiba Patents"). Each of these six patents is incorporated herein by reference as though fully set forth herein.

37. At least U.S. Patent Nos. 5,587,991; 5,732,185; 6,009,433; and 6,128,434 are explicitly covered by the License Agreement. Citron further believes that U.S. Patent Nos. 6,226,727; and 6,374,040 fall within the terms of the License Agreement especially if given the broad interpretation that Toshiba appears to be asserting against CyberHome in the Delaware Action.

38. There is a real and immediate threat that Citron will either be sued or be required to defend CyberHome against a claim by Toshiba of patent infringement relating to the manufacture and sale of DVD Products by Citron and the sale of the DVD Products by CyberHome.

39. By reason of the foregoing, an actual, justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

…

## COUNT I

### [Alleged against Toshiba in its individual capacity]

### (Declaratory Judgment of Non-Infringement of the Patents)

40. Citron realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41. Citron manufactures and sells the DVD Products.

42. Upon information and belief, Toshiba owns, by assignment, U.S. Patent No. 5,732,185 ("the '185 patent"), entitled "Multi-Scene Recording Medium and Apparatus for Reproducing Data Therefrom," issued by the United States Patent and Trademark Office ("USPTO") on March 24, 1998.

43. Upon information and belief, Toshiba owns, by assignment, U.S. Patent No. 6,009,433 ("the '433 patent"), entitled "Information Storage and Information Transmission Media with Parental Control," issued by the USPTO on December 28, 1999.

44. Upon information and belief, Toshiba owns, by assignment, U.S. Patent No. 6,128,434 ("the '434 patent"), entitled "Multilingual Recording Medium and Reproduction Apparatus," issued by the USPTO on October 3, 2000.

45. Upon information and belief, Toshiba owns, by assignment, U.S. Patent No. 6,374,040 ("the '040 patent"), entitled "Portable DVD Player," issued by the USPTO on April 16, 2002 (together with the '185 patent, the '433 patent and the '434 patent, the "Patents").

46. In filing and prosecuting an action against CyberHome in the District of Delaware, Toshiba contends that the DVD Products sold by CyberHome infringe the Patents and seeks to enjoin CyberHome, among others, from further infringing the Patents.

47.   The DVD Products sold by CyberHome that are alleged to infringe the Patents were manufactured by Citron and sold by Citron to CyberHome. Citron contends, among other things, that the DVD Products that it manufactures and sells to CyberHome do not infringe the Patents.

48.   By reason of the matters alleged above, there exists an actual controversy between Citron and Toshiba concerning whether Citron infringes the Patents.

49.   Citron seeks a declaratory judgment by the Court that the DVD Products manufactured by Citron and sold to CyberHome do not infringe the '185 patent.

50.   Citron seeks a declaratory judgment by the Court that the DVD Products manufactured by Citron and sold to CyberHome do not infringe the '433 patent.

51.   Citron seeks a declaratory judgment by the Court that the DVD Products manufactured by Citron and sold to CyberHome do not infringe the '434 patent.

52.   Citron seeks a declaratory judgment by the Court that the DVD Products manufactured by Citron and sold to CyberHome do not infringe the '040 patent.

## COUNT II

**[Alleged against Toshiba in its individual capacity]**

**(Declaratory Judgment of Invalidity of the Patents)**

53.   Citron realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.   To the extent that Toshiba defines the claims of the Patents to cover Citron's DVD Products, the Patents, and each patent claim therein, are invalid for failure to comply with the conditions of patentability as set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112.

55.   By reason of the matters alleged above, there exists an actual controversy between Citron and Toshiba concerning whether the Patents are invalid.

56.   Citron seeks a declaratory judgment by the Court that the '185 patent is invalid.

57. Citron seeks a declaratory judgment by the Court that the '433 patent is invalid.

58. Citron seeks a declaratory judgment by the Court that the '434 patent is invalid.

59. Citron seeks a declaratory judgment by the Court that the '040 patent is invalid.

## COUNT III
### (Breach of Contract)

60. Citron realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61. The License Agreement constitutes a valid and binding contract between the parties with respect to the Toshiba Patents.

62. By its actions alleged herein, Toshiba has breached its obligations under the License Agreement. Specifically, by failing to provide proper notice, attempting to terminate the License Agreement for no material breach, rejecting Citron's offer to cure Toshiba's alleged claims of default without good cause, by wrongfully attempting to terminate and stating on October 31, 2005 that the License Agreement was terminated, despite its agreement to extend the termination period, and by bringing suit in Delaware rather than in New York as required pursuant to the bargained-for forum selection clause, Toshiba has breached the terms and conditions of the License Agreement.

63. Upon information and belief, Toshiba's breach of its obligations under the License Agreement has been willful, deliberate and in bad faith.

64. Citron has fulfilled all of its obligations under the License Agreement by, *inter alia*, entering into good faith settlement negotiations with Toshiba and by tendering timely, unconditional and complete cure of its alleged breach under the License Agreement after Toshiba had agreed to extend the termination period and, correlatively, Citron's time to cure.

1750695I\V-2

65. Citron has performed each and every act required to be performed by it in accordance with the terms and conditions of the License Agreement.

66. As the direct and proximate result of Toshiba's breaches of contract, Citron has suffered damages in an amount to be determined at trial.

## COUNT IV
### (Breach of the Covenant of Good Faith and Fair Dealing)

67. Citron realleges and incorporates by reference the allegations set forth in paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68. The License Agreement imposes upon Toshiba the obligations of good faith and fair dealing and require that Toshiba deal honestly and fairly with Citron in both the performance and enforcement of the terms of the License Agreement.

69. By virtue of Toshiba's conduct alleged herein, Toshiba has breached its implied covenant of good faith and fair dealing.

70. As a result of the foregoing, Citron has been damaged in an amount to be determined at trial.

## COUNT V
### (Declaratory Judgment that (i) Citron is Not in Material Breach of the License Agreement, (ii) No Proper Notice Was Provided to Citron and (iii) There Was No Termination of the License Agreement by Toshiba)

71. Citron realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70 of this Complaint as though fully set forth herein.

72. The License Agreement constitutes a valid and binding contract between the parties with respect to the Toshiba Patents.

73. Citron has fulfilled all of its obligations under the License Agreement, including by, *inter alia*, attempting to recalculate the royalties due under the License Agreement after being notified

by Toshiba of an alleged discrepancy in the royalty calculations, by entering into good faith settlement negotiations with Toshiba and by revising its royalty calculations and report as a result of its investigation and agreeing to pay Toshiba all outstanding amounts allegedly due under the License Agreement identified as a result of that investigation.

74. Citron has performed each and every act required to be performed by it in accordance with the terms and conditions of the License Agreement.

75. By its actions alleged herein, Toshiba has failed to properly notify Citron of an alleged breach of the License Agreement with the requisite specificity proscribed by the License Agreement, and has indicated in its notification to Citron that a material breach has occurred when there has been no material breach of the License Agreement by Citron.

76. Toshiba has also failed to properly and effectively terminate the License Agreement as there was no material breach of the License Agreement by Citron, and subsequently no proper grounds for termination.

77. By reason of the matters alleged above, there exists an actual controversy between Citron and Toshiba concerning whether (i) there was a material breach of the License Agreement by Citron, (ii) there were grounds for providing notice of a material breach, (iii) proper notice was provided by Toshiba to Citron, and (iv) the License Agreement was properly and/or effectively terminated.

78. Citron seeks a declaratory judgment by the Court that at all relevant times Citron did not materially breach the License Agreement.

79. Citron seeks a declaratory judgment by the Court that there was no proper notice provided by Toshiba to Citron of a material breach of the License Agreement by Citron.

80. Citron seeks a declaratory judgment by the Court that the License Agreement was not properly or effectively terminated and thus that the License Agreement remains in full force and effect.

## COUNT VI
### (Specific Performance/Injunctive Relief)

81. Citron realleges and incorporates by reference the allegations set forth in paragraphs 1 through 80 of this Complaint as though fully set forth herein.

82. The License Agreement constitutes a valid and binding contract between the parties relating to, *inter alia*, the Toshiba Patents.

83. Citron has fulfilled all of its obligations under the License Agreement by, *inter alia*, entering into good faith settlement negotiations with Toshiba and tendering timely cure of its alleged breaches after the parties agreed to extend the termination period, and correlatively, Citron's time to cure.

84. Moreover, at this time, Citron stands ready, willing and able to tender such cure of its alleged breaches under the License Agreement.

85. Citron will be irreparably and immeasurably injured if Toshiba is allowed to wrongfully terminate the License Agreement in that Citron and potentially CyberHome will be forced to cease their business operations.

86. Citron has no adequate remedy at law.

87. Citron is thus entitled to injunctive relief directing that Toshiba continue to honor the License Agreement and/or to re-instate the License Agreement, and to provide specific performance to Citron.

## JURY DEMAND

Citron respectfully requests a trial by jury for all issues so triable.

WHEREFORE, Plaintiff Citron Electronics Co., Ltd. prays for the following relief:

A. The entry of judgment on the Complaint against Toshiba individually and/or as Authorized Licensor for the DVD6C Licensing Group, and in favor of Citron;

B. On Count I, for an order declaring that Citron does not infringe the Patents, either directly, indirectly, contributorily or through inducement, literally or under the Doctrine of Equivalents;

C. On the Count II, for an order declaring that the Patents are invalid;

D. On Counts III and IV, for direct, compensatory and consequential damages in an amount to be determined at trial;

E. On Count V, for an order declaring that (i) at all relevant times, Citron was not in material breach of the License Agreement, (ii) there was no proper notice provided by Toshiba to Citron of a material breach of the License Agreement by Citron, and (iii) the License Agreement was not properly or effectively terminated and thus remains in full force and effect;

F. On Count VI, for a preliminary and permanent injunction requiring specific performance of the License Agreement;

G. For its reasonable attorneys' fees and costs; and

17506951\V-2

    H.    For such other and further relief as the Court may deem just and proper.

DATED this 19th day of December, 2005.

Respectfully submitted,

Holly S. Falkowitz (HSF-0362)
Joel N. Bock (JB-6200)
Cliona A. Levy (CL-4057)
Sonnenschein Nath & Rosenthal, LLP
1221 Avenue of the Americas
New York, New York 10020
(Tel).: (212) 768-6700
(Fax).: (212) 768-6800

*Attorneys for Plaintiff*
*Citron Electronics Company, Ltd.*

**EXHIBIT A TO COMPLAINT**

**LICENSING AGREEMENT**

**(INTENTIONALLY OMITTED HEREIN)**

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on December 21, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Steven Balick, Esquire
>Ashby & Geddes
>222 Delaware Avenue
>P.O. Box 1150
>Wilmington, DE 19899

I further certify that I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participant in the manner indicated:

**BY FEDERAL EXPRESS**

>John J. Feldhaus, Esquire
>Foley & Lardner LLP
>Suite 500
>Washington Harbour
>3000 K Street, N.W.
>Washington, DC  20007-5109

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
*jshaw@ycst.com*
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600